GABRIEL v. JOHNSON, Immigration Com'r.

Circuit Court of Appeals, First Circuit.
November 27, 1928.

No. 2257.

William H. Lewis, of Boston, Mass., for appellant.

John W. Schenck, Asst. U. S. Atty., of Boston, Mass. (Frederick H. Tarr, U. S. Atty., of Boston, Mass., on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is an appeal from the District Court of Massachusetts, dismissing a writ of habeas corpus and remanding the petitioner, Peter Gabriel, to the custody of the Commissioner of Immigration for deportation to Syria.

In his petition for the writ it was alleged, among other things, that Gabriel first entered the United States about the 7th of July, 1913; that he thereafter resided continuously in the United States until November 13, 1923, when he left to return to his home in Lebanon, Syria, on a visit; that he returned to the United States on the steamship Madonna, arriving at Providence, R. I., May 31, 1924, or 18 days after the expiration of six months from the date of his departure, and that his failure to return within six months was due to circumstances beyond his control; that his first entry into the country was a lawful one; that he had applied for naturalization by taking out first papers, intending to become a citizen of the United States; that he owns property and a business at Onset, Mass.; and that the action of the immigration authorities in ordering him deported was unwarranted by law, and was an arbitrary and unreasonable exercise of its authority.

It appears that the petitioner arrived at Providence May 31, 1924, on the steamship Madonna, having a passport (not a permit) issued at Boston, Mass., on October 30, 1923, visaed at Beirut, Syria, April 30, 1924, and was detained as an illiterate for examination before the Board of Special Inquiry; that he was heard before the Board of Special Inquiry at Boston on June 5th and 20th, 1924, and that on the latter date the board voted to exclude him for the reasons (1) that he was an illiterate person unable to read any language or dialect and not coming under any of the exempted classes under the law; (2) as coming in excess of quota allotted to aliens born in Syria, said quota being exhausted for the balance of the fiscal year ending June 30, 1924, stating that the alien was never legally admitted into the United States prior to his departure November 13, 1923; (3) as a person who admits committing a crime involving moral turpitude, to wit, perjury, before the Board of Special Inquiry and at the time he declared his intention to become a citizen of the United States; and (4) as a person likely to become a public charge. An appeal was taken from this decision and the Board of Review, after considering the matter, recommended that the excluding decision be affirmed and the Assistant Secretary of Labor so ordered. Upon representation that the alien's business and property in the United States required attention he was temporarily admitted to the country on a departmental bond, described as a departure bond, conditioned on his departure out of the country within a fixed time. Having failed to leave the country within the time limited, on recommendation of the Board of Review, the Assistant Secretary ordered a warrant to issue for the arrest of the alien, based on the grounds contained in the exclusion order, and on the 9th day of June, 1925, such writ was issued, upon which the alien was arrested and again examined on August 24 and September 18, 1925, and March 31, 1926.

At this time the immigration inspector at Boston, before whom the hearings on the warrant were had, found that Peter Gabriel was an alien, a citizen of Syria; that he first arrived in the United States about 1911, coming through Canada, as the son of his uncle, one Matta, and at that time was unable to read or write; that his second and last arrival was May 31, 1924, through the port of Providence, R. I.; and that he was excluded by the Board of Special Inquiry June 20, 1924, stating the grounds of that order, which were made the charges in the warrant. He further found that all the charges contained in the warrant were sustained.

The record was then transferred to Washington, and on April 24, 1926, the Board of Review, after considering the matter, made a report, in which, having recounted the proceedings before the Board of Special Inquiry, it found that it was not established that the alien was ever previously lawfully admitted to the country; that the record contained no evidence of that fact, nor any convincing evidence of the length of his prior residence; that he was out of the United States more than six months, and therefore was not exempt from the quota at the time of his return May 31, 1924; that it had not been established that the alien was domiciled here for seven consecutive years, prior to his going abroad, and hence he would not be admissible under the seventh proviso of section 3 of the act of 1917 (8 USCA § 136), exempting from the operation of the illiteracy test aliens returning after a temporary ab-

sence to an unrelinquished United States domicile of seven consecutive years; but that the charge of the commission of a crime involving moral turpitude was not sustained.

It was then recommended that the alien be deported to Syria on the grounds: (1) That the quota allotted to his country for the year ending June 30, 1924, under the act of May 19, 1921, as amended by Public Resolutions, 55, approved May 11, 1922 (42 Stat. 5, 540), was exhausted; and (2) that he was in the United States in violation of the act of February 5, 1917, in that (a) he was a person likely to become a public charge at the time of his entry; and (b) that at the time of his entry he was unable to read "the English language, or some other language or dialect, including Hebrew or Yiddish," although at that time over 16 years of age and physically capable of reading, and was not exempt from the illiteracy test by any of the provisions of section 3 of said act of February 5, 1917. And the Second Assistant Secretary of Labor so ordered.

It is this order of deportation that is brought in question by the present writ of habeas corpus.

It is conceded that the quota, for the year ending June 30, 1924, and allotted to Syria, was exhausted, and that the alien, at the time of his previous entry, and also when he sought re-entry into the country, was an illiterate within the meaning of the law. It is contended, however, that he was not subject to deportation on the ground that he was likely to become a public charge, and we are of the opinion that the order of deportation cannot be sustained on this ground, for there was no evidence upon which reasonable minds could reach such a conclusion. United States ex rel. Berman v. Curran (C. C. A.) 13 F.(2d) 96.

Was he properly ordered deported on any of the other grounds charged and found against him?

Section 3, c. 29, of the act of February 5, 1917 (39 Stat. pp. 874, 875, 877, 878 [8 USCA § 136]), provides that:

The "following classes of aliens shall be excluded from admission into the United States: * * *

"All aliens over sixteen years of age, physically capable of reading, who cannot read the English language, or some other language or dialect, including Hebrew or Yiddish. * * *

"That the following classes of persons shall be exempt from the operation of the illiteracy test, to wit: * * *

"All aliens who have been lawfully admitted to the United States and who have resided therein continuously for five years, and who return to the United States within six months from the date of their departure therefrom: * * *

"Provided further, That aliens returning after a temporary absence to an unrelinquished United States domicile of seven consecutive years may be admitted in the discretion of the Secretary of Labor, and under such conditions as he may prescribe."

It is not only conceded that Gabriel at the time he first entered the United States and also at the time he sought re-entry was an illiterate, but that he did not return to the United States within six months from the date of his departure November 13, 1923. He, therefore, did not come within the terms of the first exemption above quoted. Furthermore, he did not have a re-entry permit issued under the provisions of section 10 of the Immigration Act of 1924 (8 USCA § 210), as his counsel contends, or under any other act. The act of 1924 was not approved until May 26, 1924, only five days before Gabriel sought re-entry, and permits issued under that act prior to July 1, 1924, were not good for admission to the United States before July 1, 1924. See section 31 of the act of 1924 (43 Stat. p. 169). And in paragraph (c) of section 31 it is provided that, "if any alien arrives in the United States before July 1, 1924, his right to admission shall be determined without regard to the provisions of this act, except section 23." Section 23 (8 USCA § 221) imposes upon the alien, when seeking admission, the burden of establishing that he is not subject to exclusion under any provisions of the immigration laws; and, in any deportation proceedings, the burden of showing that he entered the United States lawfully, and the time, place and manner of such entry.

It remains to be considered whether Gabriel comes within the terms of the seventh proviso of section 3 of the act of February 5, 1917, above quoted.

Under that proviso an alien returning after a temporary absence to an unrelinquished United States domicile of seven consecutive years, even though his absence may have exceeded six months, if of a temporary character, may be admitted by the Secretary of Labor, in the exercise of a sound discretion and upon such conditions as he may prescribe.

The word "domicile," as used in this proviso, means lawful domicile, and its character depends upon whether the entry into the country under which the alien seeks to es-

350

tablish a domicile was lawful. Gabriel alleged in his petition that "his first entry into the country was a lawful one," and his counsel concedes that the case turns "upon the question as to whether his previous entry, the entry prior to May 31, 1924, was a lawful entry or not." United States ex rel. Patton v. Tod (D. C.) 292 F. 243, 247, 248. See section 23 of the act of May 26, 1924.

Upon the question whether his previous entry was lawful, Gabriel at first testified that he entered the country at the port of New York about July 7, 1911, naming the steamship. But when it was learned that his landing in New York in July, 1911, could not be verified by the records at that port, he was further interrogated, and testified that when he entered the country he came with his uncle, not under his own name, but under the name of Salim Matta, his uncle's son, and that he landed in Canada and came from there to Boston by train. It also appears that in his declaration of intention, made at Boston October 25, 1923, for the purpose of naturalization and to which he made oath, he stated that he arrived at the port of New York on or about the 7th day of July, 1911, on the steamship Lorraine. He was a man about 39 years of age, had intelligence enough to enable him to acquire considerable means in the few years he had been here, and undertook to explain the discrepancy in his testimony in regard to where he landed on his previous entry by saying that he did not know the difference between Canada and New York, because his uncle told him he came to New York. His uncle testified that they entered the country from Canada in July, 1913, having landed at Quebec; and that Gabriel, who was his nephew, entered the country under the name of his son and under a ticket or passport designed and issued for the use of his son in coming into the country. In view of this evidence we think the immigration authorities were not required to find that he had lawfully entered the country and had been lawfully domiciled here for seven consecutive years, within the meaning of the proviso above quoted; and that such being the case the Secretary of Labor was not called upon to exercise his discretion and allow the alien to enter the country and prescribe the conditions for such entry.

The order or decree of the District Court is affirmed.

ANDERSON, Circuit Judge, concurs in the result.