UNITED STATES ex rel. GAGLIARDO v. KARNUTH, District Director of Immigration and Naturalization.

Civil Action No. 2611.

District Court, W. D. New York.

Dec. 18, 1945.

Israel Rumizen, of Buffalo, N. Y., for relator.

George L. Grobe, U. S. Atty., of Buffalo, N. Y. (R. Norman Kirchgraber, Asst. U. S. Atty., of Buffalo, N. Y., of counsel), for respondent.

Frank G. Pugsley, of Buffalo, N. Y., Atty. for Immigration and Naturalization.

KNIGHT, District Judge.

This is a habeas corpus proceeding to determine the legality of the imprisonment and detention of Catherine Gagliardo, the relator, by respondent, Arthur J. Karnuth, as the District Director of Immigration and Naturalization for the Seventh District. The writ was issued on October 11, 1945, on the verified petition of the relator and was made returnable on October 15, 1945. A return to the writ was filed on October 22, 1945, and the traverse to the Return was filed on November 5, 1945.

The relator was born of Italian parents, on January 2, 1905, in Vita, Italy, and was the daughter of Luminato Surdi and Francesca Surdi. Her father came to Toronto, Canada, and subsequently the mother and relator came to live with the father in Toronto. Relator was then seven years of age, and she went into Canada under an Italian passport issued to her mother. Her father obtained a certificate of naturalization in Toronto, Canada, on December 30, 1914.

After the death of her father, on February 6, 1917, her mother re-married one Antonio Dininio in December, 1920. Dininio was naturalized in Canada on July 9, 1931. On June 26, 1920, the relator was married in Toronto, Canada, to one Agenlo Briorio, a native of Italy. So far as the record shows Briorio was a citizen of Italy. The relator lived with him as his wife for little less than one year. No court action was ever taken to formally dissolve this marriage. About May, 1924, relator came to the United States from Canada and lived here most of the time from 1924 until 1932, when she returned to Canada. She resided and was employed there until some time in 1934. She has lived in this country since 1934, with the exception of short absences. In August, 1939, she went to Canada to attend the funeral of a sister and remained for about two weeks. She never has had an immigration visa nor paid a head tax for any entry into the United States. She was married to one John Gagliardo on December 29, 1941, at Niagara Falls, New York. Gagliardo is a citizen of the United States.

A preliminary examination of relator was held on October 24, 1939. She was arrested on a telegraphic warrant dated October 25, 1939, and this was issued by Turner W. Battle, Assistant to the Secretary of Labor. This warrant charged that the relator entered this country on or about the 20th day of August, 1939, "in violation of the immigration laws * * * for the following reasons, to wit: The Act of 1924, in that at the time of her entry she was not in possession of an unexpired immigration visa; and the act of 1917, in that she entered by means of false and misleading statements, thereby entering without inspection; and that she has been found managing a house of prostitution, or music or dance hall or other place of amusement, or resort, habitually frequented by prostitutes, or where prostitutes gather." A formal hearing on the telegraphic warrant of arrest was held on October 25, 1939, (she was then represented by counsel), and a second hearing was had on October 27, 1939, later continued on November 8, 1939, and on March 8, 1940. After the last of these examinations the Inspector made recommendation that the relator be deported, but he did not name the country to which she was to be deported. The warrant of deportation was issued by W. W. Brown, Chief Warrant Branch, in the Attorney-General's office, on June 16, 1941. This recited that the relator "who entered the United States at Niagara Falls, N. Y. on or about the 20th day of Aug., 1939 is subject to deportation under the following provisions of the laws of the United States to wit: The act of 1924, in that at the time of her entry she was not in possession of an unexpired immigration visa; and the act of 1917, in that she entered by means of false and misleading statements, thereby entering without inspection." The warrant did not specify that she violated "The Immigration Act of 1924" or "The Immigration Act of February 5, 1917." Relator

was arrested on the warrant of deportation on October 10, 1945. The warrant of deportation directed deportation to Italy. It is contended that the relator is a British subject and has been a citizen of Canada since December 30, 1914. This contention is based upon the Canadian Statutes of 1906, known as the Naturalization Act, Chapter 77, Section 36, page 1358, which then provided: "If the father or the mother being a widow, has obtained a certificate of naturalization within Canada, every child of such father or mother, who during infancy, has become resident with such father or mother within Canada, shall within Canada, be deemed to be a naturalized British subject."

■ It is the claim of the respondent that the foregoing statute is applicable to this relator only when she was resident *within Canada*. Section 2 of the Canadian Immigration Act reads: "(b) 'Canadian citizen' means * * * a person naturalized under the laws of Canada who has not subsequently become an alien or lost Canadian domicile." And further: "(ii) Canadian domicile is lost for the purposes of this Act by a person voluntarily residing out of Canada not for a mere special or temporary purpose but with the present intention of making his permanent home out of Canada, x." and "(iii) Notwithstanding anything contained in the preceding subparagraph, when any citizen of Canada who is a British subject by naturalization, or any British subject not borne in Canada having Canadian domicile, shall have resided for one year outside of Canada, he shall be presumed to have lost Canadian domicile and shall cease to be a Canadian citizen for the purposes of this Act, and his usual place of residence shall be deemed to be his place of domicile during said year." The two acts are to be read together. Clearly under the provisions of Section 2 of the Canadian Immigration Act, hereinbefore quoted, by removing from Canada to the United States, with the intent of making her permanent home in the United States, she lost her status as a naturalized British subject.

It is also the claim of the respondent that by relator's marriage to Briorio relator lost her status as a British subject. Relator asserts that Briorio, who it is claimed was known by the name D'Ambrosio, was married to one DiLella Concetta on April 15, 1911, in Italy and that this marriage was in force in 1920, when he married relator and that by reason of this fact the marriage of relator to Briorio was null and void. While the respondent asserts that the evidence is insufficient to show that Briorio was married when the second contract of marriage was entered into, it is believed that the evidence is sufficient to sustain the relator's contention, but this view does not effect the decision at which the court arrives

■ It is contended that relator was a non-immigrant at the time she entered on or about August 20, 1939, and not required to have in her possession an unexpired visa. This contention is entirely contrary to the law, and the holding of the courts. While she came into this country prior to July 1, 1924, when the Immigration Act of that year became law, she returned to Canada in 1932 where she resided and worked in several factories in Toronto until 1934, and as heretofore pointed out, after residing here from 1934 to 1939, she again went to Canada. Since 1917 the law has required that "there shall be levied, collected, and paid a head tax of $8 for every alien * * * enter the United States. * * *; The tax shall not be levied on account of aliens who entered the United States after an uninterrupted residence of at least one year immediately preceding such entrance in the Dominion of Canada * * * for a temporary stay." Act of Feb. 5, 1917, Sec. 2, 8 U.S.C.A. § 132. Certainly her entry was not for a temporary stay and, indeed, it is stated in relator's supporting memoranda that she "returned on each occasion to her home at Niagara Falls, N. Y." On each of these occasions of her entry into the United States she stated that she was either born in the United States or that she was a citizen of the United States. Immigration Act of 1924, 8 U.S.C.A. § 204 (b), gives no aid to the relator. This defines a "non immigrant" as "(b) an immigrant previously lawfully entered into the United States who is returning from a temporary visit abroad. Whether or not

she was an "immigrant" is not conclusive on the question involved here. Certainly a non-immigrant, as well as any other immigrant, is not entitled to come into this country by false representations as to material facts. Both in 1934 and 1939 as heretofore pointed out, the relator stated that she was a citizen of the United States. Again her entry back in 1924 was obtained under the same false representation.

This court in 19 F.Supp. 222, United States ex rel. Dombrowski v. Karnuth, considered the specific question here. There the alien entered the United States in 1907, departed from the United States and remained in Canada several days and returned in 1929. The court held that while this petitioner was exempted from payment of head tax in 1907 but he was not so exempted on the entry in 1929. She was required to pay a head tax, irrespective of whether she was an immigrant. So it has specifically been held in this Circuit in United States ex rel. Lamp v. Corsi, 2 Cir., 61 F.2d 964, 965, where it was said: "relator * * * in April, 1930, * * * was at best then a nonquota immigrant by virtue of his previous lawful residence here. As an alien he was not entitled to admission unless he had either an unexpired immigration visé or a re-entry permit." This relator had neither.

In Werblow v. United States, 2 Cir., 134 F.2d 791, 792, the appellant was lawfully admitted to this country for permanent residence in 1907. In 1929 he left this country and returned in 1930. He was compelled to surrender his passport by reason of fraudulent representations. The court there said: "This sort of entry by an alien fraudulently as an American citizen to avoid exclusion either as a quota immigrant without an immigration visa or as a non-quota immigrant without a reentry permit has already been held unlawful by this court."

In Hee Fuk Yuen v. White, 9 Cir., 273 F. 10, 11, the court said the fact that a person "has acquired a lawful domicile in the United States does not give him a status which entitled him as a matter of right to return after a temporary absence from this country, or which bars his deportation under the Immigration Act Feb. 5, 1917."

Domicile means lawful domicile, and in Gabriel v. Johnson, 1 Cir., 29 F.2d 347, the court held that the alien, having entered under the name of another person, did not enter lawfully.

The relator points to several cases as holding that oral statements made to an inspector at the time of entry, although false, does not amount to fraud preventing inspection. Iorio v. Day, 2 Cir., 34 F.2d 920; United States v. Southro, 6 Cir., 8 F.2d 1023, as well as other cases cited by the relator, present situations where the false statements did not relate to material matters and where the individuals might have been lawfully admitted had they told the truth. Th distinction is pointed in Ex Parte Guest, D.C., 287 F. 884, 890, where the court said: "Where full inquiry was averted by a person who fraudulently intended to conceal a cause for exclusion, through untruthful statements, it might perhaps be said that he entered 'without inspection.' If, however, there was no attempt to conceal a fact which would be a cause of exclusion, but merely to conceal a fact which was not a lawful cause of exclusion, but which might, in the opinion of the applicant, be likely to cause him to be excluded, the case assumes a different aspect."

It is urged that the relator had established a domicile here since 1934 and, that being so, relator was returning to her domicile as of August 20, 1939. Relator cites the definition of "domicile" as set out in U. S. Immigration Rules and Regulations, by Rule 13 A., paragraph 2, and quotes from the decision in Johnson v. Keating, 1 Cir., 17 F.2d 50, 52. In the last-mentioned case the alien first arrived from Italy in 1920. He was lawfully admitted. This relator was not so admitted. There the relator remained in the United States until 1925 when he went to Italy to visit. On his return he was excluded on the ground that he did not have a return permit or an immigration visa. The conclusion of the court there was that "A nonquota immigrant * * * is entitled to come in, if he establishes a statutory status by any reasonable method. * * * Otherwise put, a regulation which undertakes to exclude all evidence of non-quota status, except a re-

turn permit or an immigration visa, is unreasonable, inconsistent with the general import of the act, and therefore void." This decision has no application where an alien, though domiciled here, procured re-entry through material false and misleading statements. Executive Order No. 8029 of December 27, 1938, superseded by Executive Order No. 8430, effective June 5, 1940, certainly has no application here, and even though it had, it would not aid the relator. Nor does Section 13(b) of the Immigration Act of 1924, 8 U.S.C.A. § 213 (b), benefit her. The Rules and Regulations, Rule 3 subdiv. (f) paragraph (c) does provide that "An alien immigrant who has previously been legally admitted to the United States for permanent residence and has departed temporarily therefrom and returned within six months, not having proceeded to any place outside Canada * * *" may obtain entry, but, of course, here the relator never legally entered.

■■ The next point made by the relator is that neither the warrant of deportation nor the warrant of arrest alleges with sufficient definiteness the particular laws under which the relator is subject to deportation, and they were, therefore, illegal. It is not asserted that the charges are not stated with sufficient particularity. The warrant states that the relator "is subject to deportation under the following provisions of the laws of the United States, to wit: The act of 1924, in that at the time of her entry she was not in possession of an unexpired immigration visa; and the act of 1917, in that she entered by means of false and misleading statements, thereby entering without inspection." The formal warrant of arrest also refers to the two acts as such. They do not state the particular statutes or acts of 1917 or 1924. As relator points out, a warrant for arrest of an alien in deportation proceedings is not required to have the formality and particularity of an indictment. The rules with reference to indictments in criminal cases is that they need not state the particular statute which has been violated, if the crime is sufficiently set forth. In the instant case the warrant specifically states that the relator entered without having a visa in violation of the act of a particular year and also that she entered without inspection in violation of the act of a certain year. It seems to the court that the statements are sufficiently definite but not only that, not like an indictment which precedes a trial, this relator was examined several times and at such examination was represented by an attorney. Relator was examined on October 24, 1939, prior to the issuance of the warrant of arrest. She was then advised that the investigator desired to take a statement regarding her right to be and remain in the United States. In her statement made on October 25, 1939, she admitted that she made "false and misleading statements" when she entered the United States and that she was then coming to the United States to live. On October 27, 1939, and after relator had been arrested upon a telegraphic warrant, she was represented by counsel. The relator was then advised that the evidence upon which the warrant of arrest was based was available for inspection. Several corrections were suggested by the attorney for the relator as to the record of statement of October 24th, but such corrections do not materially affect the force of the admissions as made by the relator against herself. The cases of Lew Lin Skew, D.C., 217 F. 317, and Ex parte Yabucanin, D.C., 199 F. 365, have no pertinence here.

■ Nor does it seem to us that the examination of the relator by the immigration authorities or the record taken by them is prejudicial, arbitrary, unfair or a denial of relator's constitutional rights. She was examined relative to the warrant over a period of time. The hearing commenced October 25, 1939, at which time relator was told of her right to counsel, which she had and who secured an adjournment until November 8th. She was also asked if she wished a representative of any social agency present. On November 8th, relator and her attorney appeared, the attorney was asked if he was ready and willing to proceed and upon his affirmative answer the hearing continued at which time he cross examined. The same procedure occurred on March 8, 1940. A hearing was held on October 24, 1939, at which time relator was

told that any statements which she might make should be voluntary. She was warned that they might be used against her and asked if she was willing to make statement or answer under those conditions, and she replied in the affirmative. It does not appear that her attorney was then present. The same thing happened on October 25, 1939, but the inspector then stated: "* * * Any statement which you make should be voluntary, and you are hereby warned that such a statement may be used against you in *criminal proceedings.* * * *" Otherwise, the same statements were made as before. The October 24 and 25, 1939, hearing record was introduced and made a part of the record. Prior to Section 19.6(i), which became effective January 20, 1941, this could be done. She was fully advised as to her rights throughout, had counsel and was given full opportunity to be heard. When the hearings were closed, relator and her attorney were specifically asked if they had any further statements to make or evidence to offer, and they replied in the negative. Relator was not denied of any constitutional rights.

■ Relator contends that the facts relative to the conviction of the relator and the incidents of October 5, 1945, were not germane or pertinent. It is true they do not support the charges laid in the warrant of deportation. There can be little doubt from a reading of the record that it supports the charge set out in the warrant of arrest. Relator was lawfully detained on this warrant and even now, whether or not the charge in the warrant were sufficient to support the warrant, it is within the power of the court to authorize the issuance of a new warrant including the additional charge. United States ex rel. Consola v. Karnuth, 2 Cir., 108 F. 2d 178.

■ Relator contends the warrant is illegal because it directs her transportation to Italy, rather than to Canada. It is within the discretion of the Attorney-General as to whether relator be deported to Canada or to Italy, the country of her nativity. 8 U.S.C.A. § 156; United States ex rel. Hudok v. Uhl, D.C., 20 F.Supp. 928; United States ex rel. Pantano v. Corsi, 2 Cir., 65 F.2d 322. As relator has been refused as a deport by Canada, the decision to send her to the country of her nativity is sound. United States ex rel. Karamian v. Curran, 2 Cir., 16 F.2d 958; United States ex rel. Natali v. Day, 2 Cir., 45 F.2d 112. Relator suggests that no formal decision has been made by Canada as to her status and that such is an event for subsequent proceedings. No decision as to her status as a citizen of Canada is necessary. Irrespective of whether she was or was not, she was rightly directed to be deported to Italy. Immigration Act of Feb. 5, 1917, Sec. 20, 8 U.S.C.A. § 156.

■ The fact that the Attorney-General personally did not sign the warrant is inconsequential. It is to be presumed that the officer who signed the warrant for deportation had authority to do so. Nothing has appeared to the contrary. Hajdamachar v. Karnuth, D.C., 23 F.2d 956.

■ The fact that the warrant was dated June 16, 1941, and not then executed does not make it "functus officio," because of unreasonable delay. We considered a similar matter in U. S. ex rel. Consola v. Karnuth, 63 F.Supp. 727, and find nothing herein to change the matter from our decision there. It is sufficient now to say that war conditions, danger of transportation, likelihood of possible danger to the deport in Italy made it unreasonable to effect a deportation in the interim.

■ The fact that relator married an American citizen in 1941, after the date of the warrant, does not prevent deportation. She did not acquire American citizenship by so doing, and had knowledge that she might be deported and the reasons therefor.

The writ must be dismissed and the relator remanded for deportation.