MATTER OF MARTINEZ-LOPEZ

In DEPORTATION Proceedings

A—12650471

*Decided by Board August 7, 1962*
*Reconsidered by Board December 20, 1962*
*Decided by Attorney General January 6, 1964*

As inquiry would not have resulted in a proper determination of inadmissibility, respondent's willful presentation of a spurious offer of employment in connection with his application for an immigrant visa, even though such misrepresentation resulted in his conviction of conspiracy to violate 18 U.S.C. 1001, is not a material misrepresentation under section 212(a)(19), Immigration and Nationality Act, and, consequently, does not vitiate the visa for the purposes of section 212(a)(20).

CHARGES:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at time of entry—procured visa by fraud or by willfully misrepresenting material fact (section 212(a)(19) of the Act).

Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at time of entry—immigrant, no valid visa (section 212(a)(20) of the Act).

BEFORE THE BOARD

This is an appeal by the examining officer from the order of the special inquiry officer terminating proceedings. The appeal will be dismissed.

The respondent, a 23-year-old single male, a native and citizen of Mexico, was admitted for permanent residence on May 1, 1961, upon surrender of an immigrant visa. The Service claims that this visa was invalid since it was obtained by wilful misrepresentation concerning an offer of employment.

When the respondent applied for a visa, he was told to furnish an affidavit of support and an offer of employment. He obtained the affidavit of support from his brother, a legal resident of the United States, and through correspondence with relatives in the United States, obtained a letter offering him employment as a farm hand. However,

respondent was told by his relatives that the letter for which he had agreed to pay $350 was one for the record only and that no actual employment should be expected. The letter was in fact a forgery. The respondent states he knew he could not expect employment from the writer of the letter, but did not know it was a forgery. He thought the writer had given the letter as a favor. Respondent was convicted on January 10, 1962, in the United States District Court at Sacramento, California, for conspiracy to violate 18 U.S.C. 1001, by making false statements or knowingly using false writings. (He was sentenced to five years' imprisonment with all but 30 days of the sentence suspended.)

The special inquiry officer sustained neither charge; he ruled that although the forged offer of employment cut off inquiry, it did not relate to a material matter because inquiry would not have resulted in a proper determination that the alien was one likely to become a public charge. The Service Representative contends that since materiality was an element of the crime for which the respondent was convicted, the Board should hold that the misrepresentation was material in the obtaining of the visa. The contention must be dismissed. The Board is not bound by the decision in the criminal case, for there are different tests for materiality in the criminal case and the immigration case. In the immigration case the test of materiality is whether the matter concealed concerned a ground of inadmissibility or a probable inadmissibility (*Matter of S— and B—C—*, Int. Dec. No. 1168). In the criminal case (in those jurisdictions where materiality is required) the test is merely whether the false statement "could affect or influence the exercise of a Governmental function" (*United States* v. *Allen*, 193 F. Supp. 954 (S.D. Cal., 1961)).

An analogous situation exists in regard to false statements amounting to perjury in visa and immigration matters. A person could be convicted for perjury for making a material false statement under oath although the same false statement would not necessarily constitute a *material* misrepresentation in determining whether a visa had been obtained by fraud (*Matter of S—C—*, 7 I. & N. Dec. 76, 90). Since the standards of materiality in criminal and civil immigration matters differ, the existence of the conviction here does not preclude the Board from making its own determination as to the materiality of the misrepresentation. (Neither does the letter of the Consul stating that the Vice Consul would testify that the misrepresentation was material preclude the Board from making its own conclusions in the matter. See *In re Field's Petition*, 159 F. Supp. 144, 146 (S.D.N.Y., 1958).)

Would the inquiry which was cut off by the submission of the offer of employment have resulted in a proper determination that the alien

was excludable as one likely to become a public charge? We think not. When respondent applied for a visa he was 22 years of age. He was sound of body and had about ten years of farming experience. He had no specialized training, but had five years of schooling and apparently planned to seek work for which he was qualified. He spoke no English, but this was no handicap for he would work among people who spoke Spanish. He had about $50 in assets. He had a brother gainfully employed in the United States and he had other close relations who were interested in his welfare and who worked to bring him to the United States. The brother was making $85 a week in permanent employment; he was unmarried; he had been sending money to his family in Mexico, and he was interested in helping his brother. Respondent had previous experience in the United States, having spent about three months here as a contract worker. At that time he worked both in the fields and in a cannery. His services appear to have been satisfactory for he was retained here until his contract was completed. Respondent had no criminal record. (After admission for permanent residence, he secured employment in the United States which was interrupted only by civil and criminal matters connected with his efforts to come to the United States as a permanent resident.)

The examining officer contends that the likelihood of becoming a public charge is not the only ground which must be considered in determining whether the respondent was ineligible for the issuance of a visa and inadmissible to the United States. The examining officer is of the belief that the respondent would have been excludable from the United States as one who admitted the essential elements of a crime involving moral turpitude, for he had conspired to impair the lawful function of a department of the United States in violation of 18 U.S.C. 371, a crime involving moral turpitude (*Matter of E—*, Int. Dec. No. 1164).

It may well be that as an original proposition, the test for determining whether a visa has been obtained by fraud could have been made dependent upon whether there had been an obstruction of Governmental functions; however, this has not been the test which has resulted from the years of adjudications both administrative and judicial. Historically, the rule has been stated without reference to the obstruction of the Government functions which exist, of course, in each case where there is a misrepresentation concerning a matter within the lawful functions of the Government. The rule which is applied holds that wilful misstatements of an alien made in attempting to obtain a visa bar him from admission (1) if they were material, in which case he is barred because the visa had been obtained by fraud, or (2) if perjury were committed in the attempt to obtain the visa,

in which case he is barred because he had committed a crime involving moral turpitude. Misstatements which did not amount to perjury (although they did impair the lawful function of a department of the United States) would not serve to make an alien inadmissible (37 Op. A.G. 293, 1933). Congress has not questioned the rule.

We shall continue to determine materiality of misrepresentation and the admissibility of an alien who had made a misrepresentation in immigration matters, not by his liability to prosecution for impairing the lawful functions of a department of the Government, but by the standards set down by the Attorney General in *Matter of S— and B—C—, supra.*

ORDER: It is ordered that the appeal of the examining officer be and the same is hereby dismissed.

## BEFORE THE BOARD

The special inquiry officer terminated proceedings; appeal by the examining officer was dismissed by the Board on August 7, 1962. The Service believes that both charges are sustained and requests that the Board reconsider its dismissal. The motion will be denied.

Respondent, a 23-year-old single male, a native and citizen of Mexico, was admitted to the United States for permanent residence on May 1, 1961.

Respondent was convicted on January 10, 1962 in the United States District Court for conspiracy to violate 18 U.S.C. 1001 for making false statements or knowingly using false writings (in connection with an application for a visa) and given a five-year sentence to imprisonment; he served 30 days, the remainder of the sentence was suspended. The Service contends that since materiality was an element of the crime for which respondent had been convicted, materiality should be found present in the deportation proceeding in considering the nature of the misrepresentation which had been made in obtaining the visa. We pointed out in our previous order that the test for materiality is different in the criminal case from the test in the deportation case. The test for materiality in deportation cases, insofar as it relates to the instant case, has two elements—first, did the misrepresentation cut off a material line of inquiry; second, if it did, might an inquiry have resulted in a proper determination that the alien was inadmissible to the United States. Both elements must exist before a misrepresentation may be found material (*Matter of S—and B—C—*, Int. Dec. No. 1168). On the other hand, in a prosecution under 18 U.S.C. 1001, if only the first element of the test in deportation proceedings is present, materiality exists and can support a conviction. Since the second element is not a factor in the criminal

case, a finding of materiality there cannot be controlling in the deportation case where the second element is of equal importance with the first in determining materiality.

The motion enumerates the federal laws which could have been violated when respondent made false statements before the consul and points out that had the consul known the true facts, he might have obtained an admission of the commission of crime from respondent who would thereby become inadmissible to the United States. Apart from this, the Service contends, the consul, if in possession of the true facts, would have made at least a temporary refusal of the visa. The test for materiality laid down by the Attorney General in *Matter of S— and B—C—, supra,* does not concern itself with possible violation of federal laws or the possibility of a temporary refusal. B—C— had made willful misrepresentations when he applied for a visa; he probably violated the same federal laws which are mentioned in the motion. And, it is obvious, that had the consul been aware that B—C— made misrepresentations, he would have been justified in making a temporary refusal. Nevertheless, the Attorney General's test as to materiality made no reference to the possible violation of federal laws or to the fact that a temporary refusal was possible. While the Attorney General did not discuss possible violations of federal law or temporary refusals, *Matter of S—C—,* 7 I. & N. Dec. 76, one of the two precedents relied upon in the Board's order concerning *B—C—* dealt with possible violations of law (p. 86); and *U.S. ex rel. Jankowski v. Shaughnessy,* 186 F. 2d 580, 582, 2d Cir. (1951), cited by the Attorney General, indicates the use of a temporary refusal as a test; moreover, the fact that the Attorney General made the existence of materiality dependent upon what an investigation might have shown, would seem to rule out the possibility of using a temporary refusal as a test.

Examination of *Matter of L—D—L—R—,* Int. Dec. No. 1207, cited by the Service as support for the proposition that materiality exists for immigration purposes if there is a reasonable possibility that an alien would have made admissions concerning participation in crime which would have made him inadmissible, reveals that the misrepresentation there was material because it involved the concealment of conviction of a crime involving moral turpitude. The existence of the conviction made the alien ineligible for the issuance of a visa.

The motion takes issue with our finding that respondent was not one likely to become a public charge at the time he applied for admission. Our determination was made upon the state of the record as it existed when the respondent applied for his visa. After careful review of the Service contention we see no reason to change our conclusion. Reference in our order, to events occurring after respond-

ent's entry was to meet the Service contention at oral argument that respondent's work record in the United States demonstrated his inability to find employment.

The motion now raises the contention that respondent's visa was not valid because he did not furnish full and correct information on his visa application as required by the Immigration and Nationality Act and State Department regulations concerning the issuance of a visa. We do not concur in this conclusion. In *B—C—*, *supra*, there was a failure to furnish full and truthful information; the Attorney General touched on whether the visa was a valid one (footnote on p. 6), but there was no finding that the visa was invalid. To accept the Service position that any failure to furnish full or correct information regardless of the nature of the information results in an invalid visa, would in effect make every misrepresentation a material one; this approach would have made unnecessary the Congressional provision for the exclusion of a alien for obtaining a visa because of a *material* misrepresentation (section 212(a)(19) of the Act; see *Matter of S— and B—C—*, *supra*, p. 4). It appears best to use the visa charge in situations where the visa is actually invalid; for example, where a visa has been issued without specific authority or by an improper source, or it has been altered, procured by fraud, or presented after the period of validity has expired. This approach will give effect to both the provision concerning validity of visas and the provision concerning procurement of a visa by fraud. In view of this conclusion we need not enter into an elaborate analysis of the Service position other than to mention briefly two matters. Regulations and laws requiring complete and correct information in visa applications have been in existence since 1924 and have not been utilized as the basis for declaring visas invalid (See, *In re Field's Petition*, 159 F. Supp. 144, 146, 3d full para., S.D.N.Y. (1958)). The fact that the misrepresentation charge is now a separate charge although prior to the Immigration and Nationality Act it was coupled with a visa charge, appears to be irrelevant. It was true before the Act, as it is true now, that a visa charge could be sustained even though the misrepresentation charge could not. There is, therefore, no significance to be drawn from the fact that the law now specifically provides for a misrepresentation charge (See, *U.S. ex rel. Fink* v. *Reimer*, 96 F.2d 217 (2d Cir., 1938); *U.S. ex rel. Percas* v. *Karnuth*, 28 F. Supp. 597, W.D.N.Y. (1939)).

ORDER: It is ordered that the motion be and the same is hereby denied.

## BEFORE THE ATTORNEY GENERAL

The decision of the Board of Immigration Appeals in this case holding the respondent Saturnino Martinez-Lopez not deportable has

been certified to me by the Board for review, pursuant to 8 CFR 3.1 (h) (1) (iii), upon motion of the Commissioner of Immigration and Naturalization. The Commissioner has requested review because of the possible impact of the Board's decision on other cases. The decision raises several problems concerning the application of the criteria enunciated in my opinion in *Matter of S— and B—C—*, 9 I. & N. Dec. 436, for determining the materiality of a misrepresentation in cases involving section 212(a) (19) of the Immigration and Nationality Act, 8 U.S.C. 1182(a) (19).

The respondent's deportation is being sought on the ground that he was excludable at the time he entered the United States as an immigrant because he had procured his visa by willfully misrepresenting a material fact (§ 212(a) (19)) and because he was not in possession of a valid unexpired immigrant visa as required by section 212(a) (20) of the Immigration and Nationality Act, 8 U.S.C. 1182(a) (20).[1] The record shows the following.

In the winter of 1960–61, the respondent planned to immigrate to the United States. At that time, he was a citizen and resident of Mexico, in his early twenties and unmarried. He had about 5 years of schooling and had begun to work on the family farm when he was 12 or 13. He had worked in the United States for 3 months as a laborer in 1958. His brother, Salvador Martinez-Lopez, who had emigrated to the United States, lived in Los Angeles and was employed by a furniture company at an annual salary of $4,000. In the past, Salvador had contributed to the support of his relatives in Mexico; the respondent had several other relatives living in the United States. When the respondent inquired at the United States Consulate at Monterrey, Mexico, concerning the papers required for an immigration visa, he was advised that he needed, among other things, an affidavit of support and an offer of permanent employment in the United States.

Having heard from neighbors that work offers could be obtained from one Jose C. Miranda of Stockton, California, for $350, the respondent asked his brother Salvador to get one for him. Because of

---

[1] Section 241(a) (1) of the Act, 8 U.S.C. 1251(a) (1), subjects to deportation aliens who were excludable, *inter alia*, under sections 212(a) (19) and (20). Paragraphs (19) and (20) respectively make excludable:

(19) Any alien who seeks to procure, or has sought to procure, or has procured a visa or other documentation, or seeks to enter the United States, by fraud, or by willfully misrepresenting a material fact;

(20) * * * any immigrant who at the time of application for admission is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality, if such document is required under the regulations issued by the Attorney General pursuant to section 211(e).

the distance from Los Angeles to Stockton, Salvador asked one Reyes Fragoso, the husband of a cousin, who resided in Oakland, to talk to Miranda. Fragoso did so, and for $350, furnished by Salvador, Miranda sent to the respondent a letter of permanent employment to which Miranda had forged the signature of one Pellegri, a ranchowner. Attached was a note from Miranda advising the respondent not to go to the Pellegri ranch because he already had enough workers. Respondent inferred from the note that the Pellegri letter was only for the record and that he could not expect employment by Pellegri. He thought the letter had been given merely as a favor or accomodation but did not know that it was a forged document.

Subsequently the respondent applied at the United States Consulate at Monterrey for a visa, submitting an affidavit of support, executed by his brother, and the purported Pellegri letter, although he knew that he could not expect to be employed by Pellegri. When asked about his destination in the United States, he gave the address of Pellegri's ranch. The respondent was issued a visa on April 27, 1961, and was admitted to the United States as an immigrant a few days later. At that time he had in his possession from $60 to $70. He went directly to his brother in Los Angeles and never contacted Pellegri. For about a week he stayed with his brother, then obtained work as a cook through another relative.

At about that time Miranda's forgeries were discovered. The respondent, his brother Salvador, his cousin Reyes Fragoso, and Jose Miranda were indicted in the United States District Court for the Northern District of California for conspiracy to violate 18 U.S.C. 1001.[2] The indictment contained two counts. The first count charged them with having conspired to make false and fictitious representations, or to make or to use writing or documents, knowing them to contain false, fictitious or fraudulent statements, to the Department of State for the purpose of enabling the respondent to enter the United States as an immigrant. The second count in effect charged the defendants other than Salvador with having caused Miranda to falsify the work offer.

The respondent, his brother and his cousin were tried before the court, a jury having been waived. The court found them guilty on

---

[2] The section reads as follows:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

the first count. It held that work offer was "material" because the visa would not have been issued but for it.[3] It acquitted the respondent and his cousin on the second count, finding that a reasonable doubt existed as to the defendants' knowledge that the work offer was not signed by Pellegri. The court stated that they were victims, albeit willing victims, of circumstances and not flagrant or malicious violators of the law. The respondent was given a prison sentence of 5 years, of which all but 30 days was suspended, and placed on probation for 5 years. The others also received 5-year terms which were suspended in their entirety.

The Immigration and Naturalization Service then instituted proceedings to deport the respondent on the grounds described above.

The Service charged that the respondent had obtained his visa by presenting to the United States consul the Pellegri work offer, although he knew that he did not and would not have employment with Pellegri; that he had concealed from the consul the fact that the letter had been obtained from Miranda for $350, and that he withheld those facts because he believed that the consul would not have issued the visa had he been told the truth. The special inquiry officer dismissed the proceedings on the ground that the respondent's misrepresentation was not material and, hence, did not render him excludable under section 212(a)(19) or vitiate the visa for the purposes of section 212(a)(20). In reaching this conclusion, the special inquiry officer applied the tests of materiality laid down in *Matter of S— and B—C—, supra,* at 448-449, *viz.*:

*First,* does the record establish that the alien is excludable on the true facts?

*Second,* did the misrepresentation tend to shut off a line of inquiry which is relevant to the alien's eligibility [for admission]?

*Third,* if a relevant line of inquiry has been cut off, might that inquiry have resulted in a proper determination that the alien be excluded?

The special inquiry officer answered the first question in the negative. He took the position that in connection with the determination as to

---

[3] This finding of materiality was required although the defendants were indicted under a clause of 18 U.S.C. 1001 which does not *in haec verba* require that the false statement, representation, or document be material, and the indictment did not allege that the work order was a material document. It is, however, established in the Ninth Circuit, in which the case was tried, and probably in the majority of the circuits, that materiality is an element of every violation of 18 U.S.C. 1001, and not only of its first clause, in which it is specifically mentioned. *Branlow* v. *United States*, 268 F. 2d 559, 564-565 (C.A. 9); *Paritem Singh Poonian* v. *United States*, 294 F. 2d 74, 75 (C.A. 9); *Freidus* v. *United States*, 223 F. 2d 598, 601-602 (C.A.D.C.); *United States* v. *Zambito*, 315 F. 2d 266, 268-269 (C.A. 4), certiorari denied, 373 U.S. 924. The Ninth Circuit has also held that materiality need not be specifically set forth in the indictment, provided the context warrants an inference of materiality. *Paritem Singh Poonian* v. *United States, supra; Dear Wing Jung* v. *United States*, 312 F. 2d 73, 75 (C.A. 9).

417

whether an applicant for an immigration visa is excludable under section 212(a)(15) of the Act, 8 U.S.C. 1182(a)(15), as an alien likely to become a public charge,[4] a work offer is not legally required as an absolute condition for the issuance of the visa, and therefore that the purpose of such a document is merely to assist the consul in his determination. Viewed in that context, the record did not establish the respondent's excludability on the true facts Rather, the evidence established that, even in the absence of the work offer, the respondent was not likely to become a public charge.

The special inquiry officer answered the second question in the affirmative; he concluded that the submission of the work offer did cut off further investigation by the consul into the public charge issue. The third question, however, was answered by him in the negative, since nothing had been adduced to suggest that a further investigation might have resulted in a proper determination that the respondent was likely to become a public charge. Accordingly, he held that the respondent's misrepresentation with regard to the spurious Pellegri work offer was not material for the purposes of section 212(a)(19),[5] and similarly did not vitiate the visa for the purpose of section 212(a)(20).

On appeal by the Service, the Board of Immigration Appeals affirmed the ruling of the special inquiry officer. It recognized that, as judicially interpreted, materiality was an element of the offense under 18 U.S.C. 1001 of which the respondent had been convicted. It ruled, however, that the district court's holding that the work offer was a material document was not conclusive in the deportation proceeding. Under 18 U.S.C. 1001 a statement, representation, or document is material if, under the formulation of *United States* v. *Allen*, 193 F. Supp. 954 (S.D. Cal.), it "could affect or influence the exercise of a Government function." This has a broader reach than the term "materiality" in section 212(a)(19) of the Immigration Act, as it is defined in *Matter of S— and B—C—*, *supra*. The respondent's conviction under 18 U.S.C. 1001 therefore did not necessarily establish that the misrepresentation was material within the meaning of section 212(a)(19). The Board therefore felt itself free to examine the question *de novo*, and concluded that the respondent's misrepresentations were not material because nothing the consul or the immi-

---

[4] Section 212(a)(15) excludes "[a]liens who, in the opinion of the consular officer at the time of application for a visa, or in the opinion of the Attorney General at the time of application for admission, are likely at any time to become public charges."

[5] The special inquiry officer was careful to stress that his conclusions were limited to the precise facts of the case and that he was not holding that a work offer could never be material.

gration authorities could have discovered, but for the misrepresentation, might have resulted in a proper determination that the respondent was excludable as a person likely to become a public charge.[6] On the Service's motion for reconsideration the Board adhered to its decision.

The Commissioner raises essentially the following points:

1. Whether materiality of the misrepresentation for deportation purposes was established by the respondent's conviction.

2. Whether the Board properly applied the materiality tests established by *Matter of S— and B—C—*. In this connection the Commissioner also argues that the test in *Matter of S— and B—C—* is not applicable where the alien's conduct in obtaining a visa constitutes an offense against the United States.

3. Whether a significant misrepresentation, even if it does not amount to a "material" misrepresentation, renders a visa invalid for the purpose of section 212(a)(20).

I

Unquestionably the respondent did make a misrepresentation to the consul. He submitted a document which he knew was not a bona fide work offer. However, the immigration statute, section 212(a)(19), *supra*, requires that an alien's misrepresentations must be material to the question of his admissibility to the United States under the immigration laws. I agree with the Board that the respondent's conviction of conspiracy to violate 18 U.S.C. 1001, for the purpose of which the same misrepresentation was found to be material, does not conclusively establish its materiality for deportation purposes.

At the outset it should be noted that, although ordinarily a court decision may be *res judicata* or operate as a collateral estoppel in a later administrative proceeding, there is some basis for doubt as to whether this rule applies in cases where, as here, Congress has vested primary responsibility for enforcing a statute in an administrative agency and not in the courts. See *Title v. Immigration & Naturalization Service*, 322 F.2d 21 (C.A. 9); Davis, *Administrative Law Treatise*, sec. 18.11 (Vol. II, pp. 619-623).[7] Section 242(b) of the

[6] The Board rejected the Service's contention that had the respondent told the truth he would have been excludable under section 212(a)(9) of the Act, 8 U.S.C. 1182(a)(9), as one who had admitted the essential elements of a crime involving moral turpitude, *viz.*, a conspiracy to violate 18 U.S.C. 1001, in connection with his visa application. Relying on 37 Op. Atty. Gen. 293, it held that historically misrepresentations to a consul rendered an alien excludable under section 212(a)(9) only if they amounted to perjury.

[7] Thus the National Labor Relations Board has held that even if a court has decreed specific performance of a contract, it may set aside the contract in a proceeding under the Labor-Management Relations Act. Professor Davis states
Footnote continued on following page.

Immigration and Nationality Act, 8 U.S.C. 1252(b), provides that "[d]etermination of deportability in any case shall be made only upon a record made in a proceeding before a special inquiry officer," and that "[t]he procedure so described shall be the sole and exclusive procedure for determining the deportability of an alien * * *." There is, therefore, a basis for the argument that in the instant case the judicial finding of materiality could not, as a matter of law, relieve the special inquiry officer from his duty of making an independent determination of materiality.[8]

Assuming, however, that the doctrine of collateral estoppel is applicable in cases of this kind, I agree with the Board's view that on the question of materiality there was no true identity of issues in the criminal case and the deportation proceeding. Even if statutes use the same language, a determination under one is not necessarily binding in a proceeding under another since the purposes of the statutes may differ and the contexts in which the language is used may not be the same. See *Title, supra* at 25, fn. 11. The determination in the criminal case to the effect that the work offer was "material" might be considered to be binding in the deportation proceedings only if the word "material" has the same meaning in prosecutions under 18 U.S.C. 1001 as in deportation proceedings involving section 212(a)(19) of the Immigration and Nationality Act. Cf. *Hines v. Welch*, 23 F. 2d 979 (C.A.D.C.); *Thompson v. Flemming*, 188 F. Supp. 123 (D. Ore.). This, however, is not the case.

The issue of materiality under 18 U.S.C. 1001 is merely whether the misrepresentation was "calculated to induce action or reliance by an agency of the United States." *Brandow v. United States*, 268 F. 2d 559, 565; *United States v. Allen*, 193 F. Supp. 954, 957, *supra*. In contrast, the opinion in *Matter of S— and B—C—, supra*, rejects the notion that an alien becomes deportable for every false statement "calculated to induce action or reliance" by a consul; a false statement is not material unless the alien would have been excludable on the true facts, or unless the misrepresentation has shut off a line of inquiry which might have resulted in a proper determination of excludability. The term "material" does not have the same meaning in 18 U.S.C. 1001 and in section 212(a)(19) of the Act, and a determination under the former that the work offer was material is therefore not to be re-

---

Footnote continued.
that this is proper not only because of the difference in parties "but also because of the congressional intent that primary responsibility for enforcing policies of the Act shall be in the Board and not in the courts." Davis, *op. cit.*, p. 619.

[8] In this connection, cf. *National Labor Relations Board v. Pacific Intermountain Express Co.*, 228 F.2d 170, 176 (C.A. 8), certiorari denied, 351 U.S. 952; *Lane v. Railroad Retirement Board*, 185 F.2d 819, 822 (C.A. 6); *Carpenter v. Flemming*, 178 F. Supp. 791, 793 (N.D. W.Va.).

garded as conclusive in proceedings involving the latter, where the term "materiality" has a more restricted scope. Accordingly, I conclude that the Board of Immigration Appeals properly held that the inquiry into the materiality of the respondent's misrepresentation was not foreclosed by his conviction for conspiring to violate 18 U.S.C. 1001.

## II

I find no error in the Board's conclusion that the materiality standards of *Matter of S— and B—C—* were properly applied in this case. As pointed out above, that opinion holds that the issue of materiality for purposes of section 212(a)(19) turns on three questions: *First*, whether the alien is excludable on the true facts; *second*, whether the misrepresentation tended to shut off a line of inquiry relevant to the alien's admissibility; and *third*, whether, if a relevant line of inquiry has been shut off, that inquiry might have resulted in a proper determination that the alien be excluded.

In the context of this case, the initial question is whether the respondent would have been excludable under section 212(a)(15), *supra*, footnote 4, as a person likely to become a public charge. Although under the statutory language the question for visa purposes seems to depend entirely on the consular officer's subjective opinion, both the administrative and judicial decisions hold that the question must be reexamined *de novo* on an objective basis when it arises in deportation proceedings. See *Matter of M—*, 4 I. & N. Dec. 532, 538; *Matter of S—C—*, 7 I. & N. Dec. 222, 225; *Matter of C—T—P—*, 8 I. & N. Dec. 134–135; *In re Field's Petition*, 159 F. Supp. 144, 146 (S.D. N.Y., 1958). There is no error in the determinations below that the respondent was not excludable on the true facts; that, in other words, the evidence in the deportation proceeding establishes that he would not have been excludable as a person likely to become a public charge even though he did not have an offer of employment in the United States.

The provision in the immigration laws excluding aliens likely to become public charges had its origin in section 2 of the Immigration Act of 1882, 22 Stat. 214, and has been continued in all subsequent immigration statutes. It has been the subject of extensive judicial interpretation. The general tenor of the holdings is that the statute requires more than a showing of a possibility that the alien will require public support. Some specific circumstance, such as mental or physical disability, advanced age, or other fact reasonably tending to show that the burden of supporting the alien is likely to be cast on the public, must be present. A healthy person in the prime of life cannot ordinarily be considered likely to become a public charge, especially where he has friends or relatives in the United States who have in-

dicated their ability and willingness to come to his assistance in case of emergency. See, *e.g., Ex parte Mitchell*, 256 Fed. 229 (N.D. N.Y.); *Ex parte Hosaye Sakaguchi*, 277 Fed. 913, 916 (C.A. 9); *U.S. ex rel. Mantler* v. *Commissioner of Immigration*, 3 F. 2d 234 (C.A. 2); *Ex parte Turner*, 10 F. 2d 816, 817 (S.D. Cal.); *Ex parte Sturgess*, 13 F. 2d 624, 625 (C.A. 6); *Gabriel v. Johnson*, 29 F. 2d 347, 349 (C.A. 1); *U.S. ex rel. Minuto* v. *Reimer*, 83 F. 2d 166, 168 (C.A. 2). While it appears that in appropriate cases consular officers have followed the practice of requiring an alien to submit evidence of support, there is no indication that a guaranty of employment has been a prerequisite.

The legislative history of the Immigration and Nationality Act of 1952, which retained the public charge provision as section 212(a)(15), contains a review of its background and interpretation. See S. Rept. No. 1515, 82d Cong., 2d Sess., pp. 346–348. This review refers to the practice of requiring evidence of support in appropriate cases and to the judicial holdings.[9] Employment offers are not mentioned, and there is nothing to show that Congress intended such offers to be required as an absolute condition for satisfying the public charge provision.

Nor is the administrative practice of the Department of State to the contrary. The Department's regulations provide that a conclusion of ineligibility under section 212(a)(15) is to be predicated upon circumstances indicating that the alien "will probably become a charge upon the public after entry into the United States;" the disability, however, may be removed by the furnishing of a bond or undertaking. 22 CFR 42.91(a)(15). The Department's instructions to consular officers on this subject admonish them to be "flexible" and to predicate their decision upon facts relating to the alien's "age, physical condition, vocation, and existing conditions in the United States coupled with their probable effect on the applicant's likelihood of becoming a public charge after admission into the United States." (State Department Visa Handbook, Notes on 22 CFR 42.91(a)(15), Note 1.1.) While consular officers are authorized to consider "the promise of a job" (Note 3.1), this is not stated as an absolute prerequisite; alternative means of satisfying the statute are provided, viz., the possession of sufficient funds or assurances of support by relatives or friends in the United States (Notes 1.2; 4). The record shows that the respondent was an able-bodied man in his early twenties, without dependents; that he had no physical or mental defects which might affect his earning capacity, and that he had performed agricultural work for nearly 10 years. He had previously worked for 3 months in the United States,

---

[9] It had been suggested that support bonds be substituted for affidavits of support.

and his immigration was sponsored by a brother who had lived in the United States for several years and was earning approximately $85.00 a week in permanent employment. The special inquiry officer was fully justified in concluding that the respondent was not likely to become a public charge, and, in the light of the judicial interpretation of section 212(a)(15) and the pertinent administrative regulations and instructions, that he was admissible in the absence of an employment offer.

The respondent's misrepresentation, however, did shut off a line of inquiry relevant to his eligibility for a visa. It may be assumed that if the consular officer had known that the work offer was spurious, he would have examined the evidence of support more carefully. It does not appear, however, that this would have resulted in a proper determination that the respondent was excludable. Further investigation of the relationship between the sponsor and the respondent would have shown that the sponsor was a devoted brother who had in the past sent money to his family in Mexico and who was genuinely interested in assisting the respondent; that, indeed, he had assisted him in his his immigration efforts by paying $350 for the work offer. Further examination also would have disclosed that the respondent had other relatives in the United States who were willing to assist him in finding work. There is nothing in this case to suggest that further investigation would have disclosed any reasonable ground for the proper denial of a visa. In view of the particular circumstances of this case, it appears therefore that the respondent's misrepresentation with respect to the work offer was not of a material nature.

The Commissioner seeks to distinguish this case from *Matter of S— and B—C—*, on the ground that "this record establishes that the respondent was in the very act of participating in one or more crimes against the United States at the very moment he got the visa and unquestionably would not have received the visa if the forgery had been known." The fact that the respondent committed a crime against the United States at the very moment he received his visa is not peculiar to this case. It would seem that virtually every alien who at the time of his visa application makes a misrepresentation "which was calculated to induce action or reliance by an agency of the Government" (*Brandow* v. *United States, supra*) violate 18 U.S.C. 1001 at that very moment. Accordingly, this case is not distinguishable from the situations normally covered by *Matter of S— and B—C—, supra*.

In view of the findings below that the respondent did not know that Miranda had forged the work offer, I am not confronted here with the problem as to whether *Matter of S— and B—C—* also applies to a situation where a misrepresentation to the consular officer shuts off a

line of inquiry into a crime other than the misrepresentation itself or other than a wrongdoing inseparably connected with it. Cf. *Matter of L—D—L—R*, 9 I. &. N. Dec. 623.

### III

The Commissioner finally urges that the respondent's misstatements not only constituted a material misrepresentation within the meaning of section 212(a) (19) but that they vitiated the visa itself and thus rendered the respondent inadmissible under section 212(a) (20), *supra.* It has been consistently recognized, however, that the type of misrepresentation which invalidates a visa is substantially identical with that which renders the alien excludable under section 212(a) (19). See *Matter of S—C—*, 7 I. & N. Dec. 76, 89–90, and the authorities cited therein. This rule appears to be correct and in accord with the general proposition that a representation invalidates a visa only if it is material or amounts to a fraud.

For the foregoing reasons, the decision of the Board of Immigration Appeals is affirmed.