ELY, Circuit Judge:
 

 The appellants, Harris and Greer, were convicted on three counts of willfully subscribing to false income tax returns for the years 1971 through 1973 (26 U.S.C. § 7206(1)), and on five counts of willfully assisting in the preparation of false corporate income.tax returns for the years 1971 through 1973 (26 U.S.C. § 7206(2)).
 

 Appellants contend that the Government’s proof was insufficient to establish that they had willfully and knowingly subscribed to, or aided in the preparation of, false income tax returns.
 

 The false returns at issue were filed as part of an apparent attempt to cover up the receipt and diversion of funds by appellants from several Arizona restaurant businesses, including Southwest Restaurant Systems, Inc., Neptune’s East, Inc., and Sahara Caterers, Inc., which appellants owned in conjunction with another individual, one McEl-hanon. A 1971 dispute among the co-owners resulted in McElhanon’s being ousted from his positions as an officer and director of the respective corporations.
 

 Following McElhanon’s ouster, appellants entered into a business arrangement on behalf of the restaurant corporations with the Carriage Trade Dinner Club, a promotional diners club whose purpose was to increase patronage at participating restaurants. Contrary to its usual practice, Carriage Trade offered monetary incentives, by way
 
 *1252
 
 of extra payments of money, in addition to its ordinary contractual terms, to induce Harris and Greer to allow their restaurants to participate in the diners club. These extra incentive payments were made directly to Harris and Greer, and not to the restaurant corporations. Of twenty checks drawn by Carriage Trade, totaling $105,000, nineteen were issued in Greer and Harris’ names. These checks were mailed directly to Harris’ home, endorsed by appellants, and then either deposited in personal bank accounts or in a mutual account of a separate business controlled by Greer and Harris.
 

 Appellants’ accountant, Richard Turi-gliatto, who was a key figure in appellants’ defense at trial, prepared both Greer and Harris’ personal income tax returns for the years in question as well as the returns for the restaurant corporations. Appellants’ defense, both here and in the District Court, centers on the contention that Turigliatto knew of the incentive payments from Carriage Trade but that he failed to reflect the receipt of those funds in either the corporate returns or the personal returns.
 

 After appellants learned that their ousted co-owner, McElhanon, was aware of the payments from Carriage Trade to them, appellants ordered Turigliatto to file amended tax returns for the corporations so that the extraordinary payments would be shown as income to the corporations, rather than as income to the appellants personally. Appellants also filed amended personal returns for the years 1972 and 1973, but they did not show the $105,000 as personal income except for a small portion which “passed through” to them from one of the restaurant corporations, a “Subchapter S” corporation.
 

 To bring the corporations’ records into line with the amended tax returns, appellants had the corporations’ books altered to reflect diversion of payments to appellants as loans from the corporations to appellants. Whether these payments were true loans was a hotly disputed controversy at trial.
 

 Appellants contend that the lacked the willful intent to file false returns, claiming that they relied on their accountant, Turi-gliatto, to prepare true and full tax returns. At most, appellants contend, the Government proved nothing more than negligence on the part of appellants in their reliance on their accountant. The jury, however, chose to believe the prosecution and the accountant, Turigliatto, who testified that he had no prior knowledge of the payments.
 

 We conclude that the Government met its burden of proof. Section 7206(1) expressly requires that the accused not believe the return to be true and correct as to every material matter contained therein. Likewise, section 7206(2) requires that the accused must know or believe that his actions will likely lead to the filing of a false return.
 
 United States v. Miller,
 
 545 F.2d 1204, 1212 n.10 (9th Cir. 1976),
 
 cert. denied,
 
 430 U.S. 930, 97 S.Ct. 1549, 51 L.Ed.2d 774 (1977);
 
 Edwards v. United States,
 
 375 F.2d 862, 865 (9th Cir. 1967).
 

 When the Government has shown, as it did here, that on specific occasions funds which should have gone into a corporate account were in fact diverted to personal accounts for personal use, that the accused had directed persons owing money to the corporation to make checks payable directly to defendant personally rather than to the corporation, that conflicting stories had been given to government investigators, the Fifth Circuit recently held that such evidence would support a jury’s determination that the accused had willfully subscribed to a false tax return.
 
 United States v. Medel,
 
 592 F.2d 1305, 1315 (5th Cir. 1979);
 
 see also United States v. Ratner,
 
 464 F.2d 101, 105-6 (9th Cir. 1972);
 
 Sherwin v. United States,
 
 320 F.2d 137, 140-42 (9th Cir. 1963),
 
 cert. denied,
 
 375 U.S. 964, 84 S.Ct. 481, 11 L.Ed.2d 420 (1964) (consistent pattern of not reporting large amounts of income held sufficient to support inference of willfulness).
 

 Even though appellants contend that conflicting evidence in the record raises a reasonable doubt as to whether they had willfully and knowingly failed to report as in
 
 *1253
 
 come the payments received from Carriage Trade, we are constrained to review the evidence in a light most favorable to upholding the verdict.
 
 Glasser v. United States,
 
 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Accordingly, the judgments of conviction are
 

 AFFIRMED.