**UNITED STATES of America, Plaintiff,**

v.

**Matthew ALLEN, aka Matthew Weinberg, Defendant.**

**Crim. No. 29533.**

United States District Court
S. D. California,
Central Division.

May 8, 1961.

Francis C. Whelan, U. S. Atty., William A. Dougherty, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff,

Dolman & Isaac, Beverly Hills, Cal., for defendant.

BYRNE, District Judge.

On March 3, 1961, the Indictment in the instant action was filed charging the defendant in four counts with violation of 18 U.S.C.A. § 1001 [1] (false statement to an agency of the United States).

The Indictment discloses that defendant's alleged violation consists in his having made false and fraudulent statements material to the inquiry being conducted by the Special Federal Grand Jury, an agency of the United States, empanelled in May 1960 and sitting at Los Angeles.

Count One alleges that on October 20, 1960, defendant knowingly and willfully stated and represented that he first met one Marvin D. Kobey in April 1957

---

1. "§ 1001. Statements or entries generally

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

through referral by the California Employment Office at Huntington Park, California, which statement defendant knew to be false and fraudulent.

Count Two alleges that on December 1, 1960, defendant made the same false statement.

Count Three alleges that on October 20, 1960, defendant knowingly and willfully stated and represented that he was the sole owner and sole investor in Ram Company and in Ram Corporation, which statement defendant knew to be false and fraudulent.

Count Four alleges that on December 1, 1960, defendant knowingly and willfully stated and represented that he had invested all of the capital except $8,000 in Ram Engineering Corp., which statement defendant knew to be false and fraudulent.

The defendant filed a motion to dismiss the Indictment. He contends that there can be no violation of § 1001 unless the false statements are material, and that the Indictment here fails to allege or show the materiality of defendant's purportedly false statements.

■ Although the courts are sharply divided, the better view, and that adopted by the Ninth Circuit, is that 18 U.S. C.A. § 1001 has been violated only if the defendant has made a *material* falsification. Brandow v. United States, 9 Cir., 1959, 268 F.2d 559; Weinstock v. United States, 1956, 97 U.S.App.D.C. 365, 231 F.2d 699; Freidus v. United States, 1955, 96 U.S.App.D.C. 133, 223 F.2d 598; Rolland v. United States, 5 Cir., 1953, 200 F.2d 678, certiorari denied 1953, 345 U.S. 964, 73 S.Ct. 950, 97 L.Ed. 1383; Todorow v. United States, 9 Cir., 1949, 173 F.2d 439, certiorari denied 1949, 337 U.S. 925, 69 S.Ct. 1169, 93 L.Ed. 1733; United States v. Cowart, D.C.D.C.1954, 118 F.Supp. 903; United States v. Rice Growers Ass'n of California, D.C.N.D. Cal.1953, 110 F.Supp. 667. The reason for the requirement of materiality in the false or fraudulent statement, is expressed as follows in Freidus v. United

States, supra, at pages 601 and 602 of 223 F.2d:

"One portion of § 1001 refers to willfully and knowingly falsifying, concealing or covering up 'a *material* fact.' On the other hand, the part here involved, without expressly mentioning materiality, prohibits 'any false, fictitious or fraudulent statements or representations.' We think, however, that this highly penal statute must be construed as requiring a material falsification. The legislative purpose strongly implies that only material false statements were contemplated, i. e., statements that could affect or influence the exercise of a governmental function. That purpose, as expressed by the Supreme Court in United States v. Gilliland, was 'to protect the authorized functions of governmental departments and agencies from the perversion which might result from the deceptive practices described.' No perversion of a governmental function could possibly result from a false statement that was incapable of affecting or influencing such function. And the greater weight of authority in the federal courts supports the view that materiality is an essential element of the offense described by § 1001. * * *"

The Indictment in the instant case does not allege that the false and fraudulent statements made by defendant were material to the inquiry being conducted by the Grand Jury; it is merely alleged that the statements were made in a *matter* which was material to the inquiry. Of course, the matter in which the false statements were made may be material to the inquiry without the statements themselves being material.

■ However, it is not necessary that the Indictment allege *in haec verba* that the false statement was material; it is sufficient if materiality can be inferred from the facts stated. United States v. Okin, D.C.D.N.J.1955, 154 F.Supp. 553; United States v. Lohman, D.C.S.D.Ohio

1953, 127 F.Supp. 432; United States v. Cowart, D.C.D.C.1954, 118 F.Supp. 903; United States v. J. R. Watkins Company, D.C.Minn.1954, 16 F.R.D. 229.

■ The false statement is "material" if it could affect or influence the exercise of a governmental function, Brandow v. United States, 9 Cir., 1959, 268 F.2d 559, Freidus v. United States, 1954, 96 App. D.C. 133, 223 F.2d 598; or if it is capable of influencing the tribunal in the determination required to be made, Weinstock v. United States, 1956, 97 U.S. App.D.C. 365, 231 F.2d 699.

■ Tested by these criteria, the Indictment does not show the materiality of the false and fraudulent statements allegedly made by defendant. The statements are set forth in detail, but there is absolutely no indication as to the nature and purpose of the inquiry being conducted by the Grand Jury. Thus, it is impossible to tell from the Indictment whether or not defendant's false and fraudulent statements were material to the inquiry; for all that appears, these statements might have had no effect or influence whatsoever upon the determination of the Grand Jury.

■ In addition to the contention urged by the defendant that the Indictment is insufficient under § 1001, the Section is not applicable at all under the facts as set forth in the Indictment, as the Grand Jury is not an "agency" as that term is used in § 1001, nor were the defendant's answers to questions propounded to him "statements" within the meaning of § 1001.

Title 18 U.S.C.A. § 6 defines "agency" as follows:

"§ 6. Department and agency defined

"As used in this title:

\* \* \* \* \* \*

"The term 'agency' includes any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a pro-prietary interest, unless the context shows that such term was intended to be used in a more limited sense."

The following have been held to be "agencies" within § 1001, supra: Federal Bureau of Investigation, United States v. Stark, D.C.Md.1955, 131 F. Supp. 190; War Assets Administration, Todorow v. United States, 9 Cir., 1949, 173 F.2d 439, certiorari denied 1949, 337 U.S. 925, 69 S.Ct. 1169, 93 L.Ed. 1733; exclusion board in military area established under Executive Order, United States v. Meyer, 2 Cir., 1944, 140 F.2d 652; Veterans' Administration, Sanchez v. United States, 1 Cir., 1943, 134 F.2d 279, certiorari denied 1943, 319 U.S. 768, 63 S.Ct. 1325, 87 L.Ed. 1717; Commodity Credit Corporation, Spivey v. United States, 5 Cir., 1940, 109 F.2d 181, certiorari denied, 1940, 310 U.S. 631, 60 S.Ct. 1079, 84 L.Ed. 1401. Although this list is by no means exhaustive, no case has been found in which there has been a prosecution under § 1001, for false statements made by a witness in the course of proceedings before the federal Grand Jury.

■ The conduct Congress intended to prevent by § 1001, is the willful submission to federal agencies of false statements calculated to induce agency reliance or action, irrespective of whether favorable agency action has actually resulted. Brandow v. United States, 9 Cir., 1959, 268 F.2d 559; United States v. Coastal Contracting & Engineering Co., D.C.Md.1959, 174 F.Supp. 474; United States v. Quirk, D.C.E.D.Pa.1958, 167 F.Supp. 462, affirmed, 3 Cir., 1959, 266 F.2d 26. The purpose of § 1001 is well stated in United States v. Myers, D.C. N.D.Cal.1955, 131 F.Supp. 525, at page 531:

" \* \* \* The statute is broad in its scope and is designed to protect the authorized functions of *governmental departments and agencies* from the perversions which might result from the deceptive practices forbidden by it (citing cases). It is in effect designed to insure to the whole world, governmental em-

ployees and the general public alike, that any record, document, instrument or statement made by a governmental employee, great or small, in his official capacity and in the course of his official duties can be relied upon by all." (Emphasis added.)

The case of United States v. Stark, D.C.Md.1955, 131 F.Supp. 190, supports defendant's contention that his replies to questions propounded by the Grand Jury were not "statements" within the meaning of § 1001. There, two contractors were prosecuted under 18 U.S.C.A. § 1001 for having given false answers to questions asked by FBI agents who were investigating an alleged bribery attempt. The court first analyzed the nature of the "statement" involved:

"With regard to the nature and character of the 'statement' here involved it is to be noted (1) that it was not in writing; (2) it purported to have been given under oath; (3) it did not relate to any claim by or on behalf of the defendants against the United States or any department or agency thereof; (4) it was not made by the defendants to obtain or retain any official position or employment in any agency or department of the government and (5) possibly more importantly, was not initiated or volunteered by the defendants but was only an answer given in response to a particular inquiry." (At page 198.)

Then, after discussing the legislative history of § 1001, the court at page 205 considered the purpose of this section:

" * * * Running through the whole Act there seems to be discussed the congressional purpose to (1) protect the government against false pecuniary claims and (2) as stated in the Gilliland case, to protect governmental agencies from perversion of their normal functioning. *The purpose seems to be to protect the government from the affirmative or aggressive and volun-*

*tary actions of persons who take the initiative, or, in other words, to protect the government from being the victim of some positive statement, whether written or oral, which has the tendency and effect of perverting its normal proper activities.* In the instant case the defendants did not volunteer information, they were not seeking any action by the government or making any claim upon it, or for action by its officers against other persons. * * * (Emphasis added.)

Finally, at page 206, the court concluded that defendants' false answers could not be considered "statements" within the meaning of § 1001:

" * * * I conclude, therefore, that the legislative intent in the use of the word 'statement' does not fairly apply to the kind of statement involved in this case where the defendants did not volunteer any statement or representation for the purpose of making claim upon or inducing improper action by the government against others. * * * "

To the same effect is United States v. Philippe, D.C.S.D.N.Y.1959, 173 F.Supp. 582, where it was held that the false oral denial by defendant of a suspected source of income made to a special agent of the Internal Revenue Service investigating and interrogating defendant under oath, for possible criminal income tax evasion, did not constitute a "false statement" within the purview of 18 U.S.C.A. § 1001.

■ Defendant in the instant case has filed an affidavit stating that he was subpoenaed to appear as a witness before the Grand Jury, that his testimony did not relate to any claim by or on his behalf to obtain or retain any official position in any governmental department or agency, that he sought no advantage from the government, and that he was merely a witness who answered the questions propounded to him.

It will be noted that the basis for counts "One" and "Three" is the Grand Jury interrogation of October 20, 1960,

and the basis for counts "Two" and "Four", the Grand jury interrogation of December 1, 1960. Apparently it is the position of the government that if twenty questions were propounded to the defendant at one hearing and twenty false answers given, it would constitute twenty false "statements" within the meaning of § 1001, and therefore twenty separate crimes.

The defendant has been improperly indicted under 18 U.S.C.A. § 1001, because the federal Grand Jury is not an "agency of the United States" within the meaning of § 1001, and because this statute was not intended to cover the situation in which defendant is accused of having made a false and fraudulent reply when interrogated by the Grand Jury. In short, defendant should have been charged with perjury and indicted under 18 U.S.C.A. § 1621.[2]

The defendant's motion to dismiss the Indictment is granted.

2. See United States v. Alu, 2 Cir., 1957, 246 F.2d 29; United States v. Parker, 7 Cir., 1957, 244 F.2d 943, certiorari denied, 1957, 355 U.S. 836, 78 S.Ct. 61, 2 L.Ed.2d 48; Dolan v. United States, 8 Cir., 1955, 218 F.2d 454, certiorari denied 1955, 349 U.S. 923, 75 S.Ct. 665, 99 L.Ed. 1255.