**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Sam RATNER, Defendant-Appellant**
**(two cases).**

**Nos. 71–2826, 71–2827.**

United States Court of Appeals,
Ninth Circuit.

June 21, 1972.

Bruce I. Hochman (argued), Harvey D. Tack, of Hochman, Salkin & De Roy, Los Angeles, Cal., for defendant-appellant.

David Fox, Asst. U. S. Atty. (argued), Eric A. Nobles, Asst. U. S. Atty., William D. Keller, U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before BARNES, WRIGHT, and CHOY, Circuit Judges.

BARNES, Circuit Judge:

These are two tax fraud cases, wherein appellant appeals from his conviction on five counts charged in two indictments (which were consolidated for trial and hearing on appeal). On each count, defendant received concurrent sentences of two years imprisonment, suspended, and probation for three years. He was also fined $2,000 in No. 71–2826, and $2,500 in No. 71–2827.

In No. 71–2826, defendant was charged with a violation of 18 U.S.C. § 1001 (Making a False Statement to a Governmental Agency). When Special Agent Greene asked him about his tax returns for the years 1964 and 1965, he represented "that he had no bank account, business or personal, in either San Jose or Red Wood (sic) City for either of the retail outlets."; and that he had only four bank accounts, all in Los Angeles County during 1964 and 1965, two business and two personal, which he specified (Ex. 56). It was stipulated at the trial (Ex. 48) he had bank accounts, which were his, in San Jose (Ex. 48, paragraph 4(c), and Ex. 13–17) and Redwood City, California (idem., 4(d), and Ex. 18–21) (where appellant had book stores), during 1964 and 1965.[1]

In No. 71–2827, defendant was charged in four counts with (a) income

tax evasion during the calendar year 1964 (26 U.S.C. § 7201); (b) filing a false income tax return for 1964 (26 U. S.C. § 7206(1)); (c) income tax evasion for 1965 (26 U.S.C. § 7201); (d) filing a false income tax return for 1965 (26 U.S.C. § 7206(1)).

The government asserts the sole issue presented on these appeals is whether the evidence is sufficient to sustain the several convictions. Appellant breaks this issue down further, by claiming (a) no conviction in No. 71–2826 is possible because of the "exculpatory no" rule respecting 18 U.S.C. § 1001; (b) there was insufficient evidence that appellant *knowingly and intentionally* made a material false statement; (c) the existence of an asserted *partnership* prevents any finding of understatement of gross receipts by appellant for 1965; (d) because of the above legal positions, the evidence is insufficient to establish a *fraudulent intent* on the part of defendant as to the 1964 return.

We hold the evidence is more than sufficient in No. 71–2827 to establish defendant's fraudulent intent in making, knowingly and intentionally, a material false statement in his returns for 1964 and 1965.

We hold in No. 71–2826 the "exculpatory no" rule does not apply under the circumstances existing in this case; and that the evidence is sufficient to demonstrate beyond a reasonable doubt that the false statement · was material and was intentionally and knowingly made.

We therefore affirm the conviction on all counts.

I. *"The Exculpatory No" Rule.*

United States v. Allen, 193 F.Supp. 954 (S.D.Cal.1961) suggests certain fac-

---

1. These accounts were in the names of "Sam Roberts", or "Sam or Estelle Roberts". They showed San Jose (First National Bank of San Jose) deposits and withdrawals amounting to one or two thousands of dollars each month from January through December, 1964 (Ex. 13 and 14) involving hundreds of separate transactions during the entire year of 1964 (Ex. 15a and 15b); and January of 1965 (Ex. 17). They also showed Redwood City (United California Bank) deposits and withdrawals of lesser sums (Ex. 18 and 19), involving hundreds of separate transactions, through all of 1964 (Ex. 20).

tors to be considered in determining whether this rule applies.[2]

We do not read the *Allen* case, *supra,* as appellant does. We believe it holds:

*One:* "Although the courts are sharply divided, the better view, and that adopted by the Ninth Circuit, is that 18 USCA § 1001 has been violated only if the defendant has made a *material* falsification. Brandow v. United States, 9 Cir., 1959, 268 F.2d 559. . . . Todorow v. United States, 9 Cir., 1949, 173 F.2d 439, certiorari denied 1949, 337 U.S. 925, 69 S.Ct. 1169, 93 L.Ed. 1733. . . ."; at 956.

*Two:* The *materiality* of the false statement can be inferred from the facts stated;

*Three:* The false statement is material only "if it could affect or influence the exercise of a government function, . . ."; at 957.

*Four:* The materiality of the questions asked could not be determined from the record then before the court;

*Five:* The grand jury is not an "agency" within § 1001, nor were the answers given "statements" within § 1001;

*Six:* "The conduct Congress intended to prevent by § 1001, is the willful submission to federal agencies of false statements calculated to induce agency reliance or action, irrespective of whether favorable agency action has actually resulted. Brandow v. United States, 9 Cir., 1959, 268 F.2d 559; . . ."

Judge Byrne, in writing the *Allen* opinion, relied primarily on *Brandow, supra.* The *Brandow* case is particularly relevant here, because it involved a sworn statement submitted by a taxpayer (later charged with income tax fraud) to "two special agents of the Internal Revenue Service of the Treasury Department of the United States." (268 F.2d p. 561). These agents of the Internal Revenue Service were held to be a part of the Treasury Department, itself an agency of the United States Government (p. 564). This had long been the rule followed in the Ninth Circuit; Cohen v. United States, 9th Cir., 1953, 201 F.2d 386, 392; Pitts v. United States, 9th Cir. 1959, 263 F.2d 353; but not in all circuits.

The necessity that the statement be material is discussed in *Brandow* (268 F.2d p. 564), as well as the "highly penal" nature of § 1001, and our agreement with the reasoning in United States v. Quirk, E.D.Pa., 1958, 167 F. Supp. 462, 464, affirmed (3rd Cir. 1959), 266 F.2d 26.

Appellant likewise heavily relies on United States v. Phillippe, S.D.N.Y.1959, 173 F.Supp. 582. We cannot consider the defendant's statements to the two agents as mere exculpatory denials. The validity of the reliance on the *Phillippe* case, *supra,* is completely invalidated by

---

2. Appellant asserts these factors are: 1. Was the statement in writing? 2. Was the statement given under oath? 3. Did it relate to any claim by or on behalf of defendant against the United States? 4. Was the statement made by defendant to obtain or retain an official position or employment with the government? 5. Was the statement initiated or volunteered by the defendant, or only an answer given in response to a particular inquiry?

We do not find this listing in Judge Byrne's opinion. We assume the reference should have been to United States v. Stark, 131 F.Supp. 190 (D.C.Md.

1955). We declined to follow *Stark* in Brandow v. United States (9th Cir. 1959), 268 F.2d 559, *post.*

In *Allen, supra,* the questions were asked of Allen before a grand jury, and the trial court held (a) there was no proof of the *materiality* of alleged false statements; (b) the Grand Jury is not an "agency" within the meaning of § 1001; (c) the defendant's answers to questions propounded to him before the grand jury were not "statements" within the meaning of § 1001; (d) that defendant should have been charged with perjury before the grand jury, and indicted under 18 U.S.C. § 1621.

the subsequent case of United States v. McCue, 301 F.2d 452 (2nd Cir., 1962) certiorari denied 370 U.S. 939, 82 S.Ct. 1586, 8 L.Ed.2d 808 (1962),[3] which, on p. 456 specifically reject[s] "the reasoning and the result in that decision." McCue, Sr., like Ratner, made a false statement in an interview with Internal Revenue Service officials. This was an oral statement, and McCue, Sr. was under oath.

In discussing the applicability of § 1001, the court stated:

"There is no reason to believe that the administration of the tax laws and the collection of taxes is not one of the processes of government which the statute was designed to protect, or that making false statements about taxes to the representatives of the Treasury is not the kind of interference and obstruction which the statute was intended to prevent." 301 F.2d at 455.

Judge Hays, writing for the Court of Appeals, then differentiated the "exculpatory no" to the policeman as delineated in United States v. Davey, 155 F. Supp. 175 (S.D.N.Y., 1957) and United States v. Stark, 131 F.Supp. 190 (D.Md. 1955)—two of the cases likewise cited and relied upon by appellant herein.[4]

Appellant likewise cites and relies on Paternostro v. United States, 5th Cir., 1962, 311 F.2d 298. The original circuit opinion in that case first concerned itself with the conviction under § 1001, and after detailing the split in the Circuits, noted that the investigation was into police graft; that "[t]he appellant . . . made no statement relating to any claim on his behalf against the United States or an agency thereof," and that defendant "did not aggressively and deliberately initiate any positive or affirmative statement calculated to pervert the legitimate functions of Government." (idem, p. 305). It concluded that "in the circumstances and under the facts of the instant case" § 1001 did not apply. The original panel next ruled on the perjury indictment (idem, pp. 305–309), and held the government had failed to carry the burden of proof required. On petition for a rehearing it re-emphasized (idem, p. 309) " . . . [t]he 'exculpatory no' answer without any affirmative, aggressive or overt misstatement on the part of the defendant does not come within the scope of . . . § 1001."

We are not bound by the Paternostro case and we do not agree with its reasoning in distinguishing that case from Knowles v. United States, 224 F.2d 168 (10th Cir., 1955) and Cohen v. United States, supra, which deal with "written statements." It fails to distinguish cases from the Circuit and differs from later Second Circuit holdings. See Judge Bonsal's discussion in United States v. Adler, 2nd Cir., 1967, 380 F.2d 917, at 922.

The statement here was not in writing, although the appellant knew the agents were writing down what he said. This circuit has applied the rule to oral statements, and we do not in this circuit read the statute narrowly in determin-

---

3. Leave to file petition for rehearing denied.

4. We can say with confidence, as did the Second Circuit in *McCue, supra:*
   "The great weight of judicial authority supports the applicability of Section 1001 to the circumstances of the present case. The recent cases in . . . the Supreme Court . . . contain no suggestion of confining the effect of the statute to any smaller area than that encompassed by its own broad language. On the contrary there are indications that the [Supreme] Court rejects any theory of narrow applicability." 301 F.2d p. 455.
   Cf. United States v. Gilliland, 312 U.S. 86, 93, 61 S.Ct. 518, 85 L.Ed. 598 (1941); United States v. Beacon Brass Co., 344 U.S. 43, 46, 47, 73 S.Ct. 77, 97 L.Ed. 61 (1952); United States v. Bramblett, 348 U.S. 503, 507, 75 S.Ct. 504, 99 L.Ed. 594 (1955).
   In Cooper v. United States, 282 F.2d 527 (1960), this Circuit upheld the applicability of § 1001 to an *oral statement, made to special agents* of the Internal Revenue Service, relying primarily on *Brandow, supra,* and *Cohen, supra.*

ing what constitutes a "statement" in order to avoid applying § 1001. Tzantarmas v. United States, 402 F.2d 163 (1968); Cooper v. United States, 282 F.2d 527 (1960).

Appellant asserts in his brief, "the investigating officers not only did not rely upon the (defendant's) response, . . . but in fact could not under any circumstances be expected to rely upon the defendant's answer. The materiality was never demonstrated during trial." No argument nor any authority is cited in support of such a proposition, either as a matter of law or fact.

■ It seems obvious to us that the concealment, and the denial of the existence, of business bank accounts (stipulated to have been maintained by defendant, with the aid of false names) and the keeping of poor and insufficient records in an income tax fraud investigation was clearly material, could only be calculated to induce agency reliance, and was willful.

Appellant next suggests that United States v. Bedore, 455 F.2d 1109 (9th Cir., 1972) is controlling. That was an "exculpatory no"—policeman case, involving the attempted service of a subpoena on Bedore by the F.B.I. Bedore denied his identity, giving his roommate's name. This was, in the words of Bedore "unrelated to any claim of the declarant . . . against the United States. . . ." 455 F.2d p. 1111.

We do not consider the ruling controlling here, in view of the several previous Ninth Circuit cases holding answers to Internal Revenue Service investigations to be outside the "exculpatory—'no'—police-officer" holdings.

Finally, the appellant argues that, although he admittedly denied the existence of *bank accounts* in Northern California, (1) he did not deny his operation of *stores* in Northern California; (2) "these stores represented an unhappy experience in his life"; (3) the defendant was relatively unsophisticated compared to the Treasury Agents; (4) defendant was not asked about the ficti-

tious name under which he utilized the unrevealed bank accounts—and thus he should be presumed innocent. None of these suggestions convinces us that this is a case for the application of the "exculpatory no" rule, nor that the evidence was insufficient to permit a conviction under 18 U.S.C. § 1001.

II.  *The 1964 Income Tax Returns* (Counts I and II, #71-2827)

To establish a lack of fraudulent intent, appellant urges that it was defendant's accountant, Mr. Glick (who was paid only $25.00 per month for his services), who was responsible for the poor records; that *he* knew of the defendant's bank accounts and defendant's use of the false name, "Sam Roberts"; that the "defendant could have reported an additional $2,610 of income without paying any tax"; that defendant was nervous and desperate, depressed and irritable.

Appellant's brief makes no reference to the undisputed fact that the defendant, in subscribing to his 1964 federal income tax return, submitted materially false figures, understating his gross business receipts by at least $8,491.00. At trial, defendant's counsel on appeal admitted in cross-examination that his own analysis of the 1964 bank accounts showed an understatement by Ratner of his gross 1964 income [R.T. 510–511].

The trial court found this understatement in both 1964 and 1965 was a knowing and intentional act. [R.T. 593–594] By understating his gross business income by $8,491.00, he not only made a false statement (26 USC § 7206(1)), but knowingly evaded an income tax of at least $1,163.37 for 1964 [R.T. 513] (26 USC § 7201).

III.  *The 1965 Income Tax Returns* (Counts III and IV, #71-2827)

The only distinction claimed by appellant between the avoidance of tax, and the false statements in 1964 as compared to 1965 relate to the partnership allegedly created by Ratner and one Snyder "as of September 1, 1965."

Exhibit 58 (p. 28, l. 25 to p. 29, l. 19) discloses the original sworn tape-recorded testimony of defendant's accountant Glick on December 20, 1968. Then he said the partnership was formed "just to handle one specialty item", and that it was after January 1, 1966, that Ratner and Snyder pooled *all* their business interests in a corporation. It was at the trial, two years later, and five years after the event, that Glick remembered that "all" of Ratner's business interests went into the partnership in 1965.

Not only was there conflict in Glick's testimony, but defendant's own business records and tax returns indicated the partnership arrangement was not a pooling of *all* business interests of the two partners. The trial court found the partnership was for a limited purpose only—and could not, as a matter of law excuse defendant's guilt [R.T. 592–594] of violating either §§ 7201 or 7206(1) of Title 26, USC.

Proof of the defendant's criminal intent was obviously inferred from certain acts, and the general manner in which he conducted his business.[5]

We conclude, viewing the evidence as we are required to do by Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), that it is clearly sufficient to support the convictions on each of the five counts. We affirm as to each count.

---

5. This is summarized by the Government as follows:

"1. Ratner, in business for himself, was in a unique unsupervised position to siphon off considerable portions of his gross income, and to thereafter understate gross income on his tax returns. He sold sexually oriented materials through his two bookstores, and through the mails. Business income came to him in small individual amounts comprised of cash, checks, and money orders.

2. Defendant maintained undisclosed bank accounts in San Jose and Redwood City under the fictitious name of "Sam Roberts". His bookstore managers dealt with him as Sam Ratner, not Sam Roberts (R.T. 104, 125). Defendant's wife was not aware of the Northern California accounts (R.T. 344–345). When asked by Internal Revenue Special Agents, Ratner denied the existence of accounts in either city, and omitted them from a list of his 1964–1965 bank accounts (R.T. 39–42).

3. Ratner's Redwood City employees were paid with cash out of the till, and it is apparent that this business income was therefore never reported (R.T. 121–123, 128–129).

4. Defendant told his store managers not to withhold any state or federal deductions from the wages paid to his employees (R.T. 105, 121–122).

5. During the years in question, defendant's wife had several bank accounts held under fictitious names, and substantial sums passed through these accounts. Also, a portion of the deposits to these accounts consisted of checks and cash given to her by Ratner (R.T. 336–342, 350–351, 356–361). It is apparent that a significant portion of these deposits was business income unreported by the defendant.

6. Defendant's accountant relied exclusively upon lump sum income figures given to him by Ratner. These lump sums were not verified or double checked in any way by the accountant (R.T. 398–403). Under this arrangement, defendant was free to understate his gross income to his accountant, and he did so, resulting in the false returns and tax evasions proven at trial.

Any one of the above factors supports the conclusion that defendant acted with the requisite criminal intent as to each of the five counts underlying his convictions."