UNITED STATES of America,

v.

Damian BUTLER, Kimberly Jones, Monique Dopwell, and Hillary Weston, Defendants.

No. S1 04 Cr. 340(GEL).

United States District Court, S.D. New York.

Nov. 4, 2004.

Daniel M. Gitner, Helen V. Cantwell, Assistant United States Attorneys, New York, N.Y. (David N. Kelley, United States Attorney for the Southern District of New York, of counsel), for the United States of America.

Margaret M. Shalley, Fasulo, Shalley, and Dimaggio, New York, NY, for Defendant Damion Butler.

Mel A. Sachs, New York, NY, for Defendant Kimberly Jones.

Brian Kaplan, Goldberg & Kaplan, New York, NY, for Defendant Monique Dopwell.

Michael F. Bachner, Bachner & Herskovits, P.C., for Defendant Hillary Weston.

## OPINION AND ORDER

LYNCH, District Judge.

The indictment in this case charges the four defendants in eighteen counts with offenses ranging from possession of firearms by a convicted felon, through perjury and obstruction of justice, to fraudulent use of a passport. The allegations in the indictment, which principally stem from a shootout on a Manhattan street in February 2001 and an alleged conspiracy to obstruct a grand jury investigation into that event, are set forth in the Court's prior opinion addressing the defendants' various motions to sever the charges, *United States v. Butler*, No. S104 Cr. 340, 2004 WL 2274751 (S.D.N.Y. Oct.7, 2004), and will not be repeated at length here. This opinion will address miscellaneous motions made by the defendants.

### I. *Butler: Motion to Strike Surplusage*

 Defendant Damian Butler moves to dismiss alleged surplusage from the indictment. Such motions are granted only where the allegations are irrelevant to the crime charged and are inflammatory and prejudicial. *United States v. Mulder*, 273 F.3d 91, 99 (2d Cir.2001); *United States v. Hernandez*, 85 F.3d 1023, 1030 (2d Cir. 1996). That standard cannot be met here.

In the first place, it should be noted that motions to strike purported surplusage are. largely meaningless, at least in this Court. It is not the usual practice of this Court to provide the jury with a copy of the indictment in any event, and if it should be appropriate to give a copy of the indictment to the jury in connection with their deliberations, that copy can be redacted according to the charges, allegations, and evidence that remain relevant in light of the entire trial. There is little or no purpose in attempting to predict in advance of trial what evidence will prove admissible or how specific allegations relate to the overall charges.

■ Butler's motion is addressed primarily to three topics. First, he moves to strike certain allegations relating to the defendants' relationship to one Christopher Wallace, and to the murder of Wallace in 1997. (Butler Br. 3–4.) The defendants' relationship to Wallace is clearly relevant background to the charges in this Indictment, since it explains the origins of their relationship with each other. The Government less persuasively argues that the fact of Wallace's murder is relevant because it "is necessary to explain why Wallace is no longer a major part of the defendants' lives." (Gov't Br. 7.) At this stage of the case, it is premature to decide whether the absence of Wallace from the defendants' lives is significant to the case, or if it is, whether the manner of his death, as opposed simply to the fact of it, is relevant. At any rate, nothing

about the defendants' relationship with Wallace, or the fact or manner of his death, is inflammatory or prejudicial to the defendants. So far as appears in the Indictment, Wallace was a musician and businessman who "provided opportunities in the music business to his friends," including certain of the defendants. (Indictment ¶ 3.) Nor is the fact that Wallace was murdered (*id.* ¶ 4) prejudicial. Nothing in the Indictment suggests that defendants had anything to do with that crime, and the Government is apparently prepared to stipulate that they did not. That Wallace was a rap musician and fell victim to violence will not shock any jurors, and in light of the undisputed facts that the defendants are all involved in the rap music business and that the case will revolve around a violent incident outside a rap radio station, the allegations regarding Wallace do not alter in any way the nature of the case being presented.

■ Second, Butler seeks to strike language in the indictment describing the injury suffered by the shooting victim, and his intent in allegedly possessing and firing a gun on the date in question. (Butler Br. 4–5.) The full story of the events surrounding the shootout is manifestly relevant to the charge that Butler, allegedly a convicted felon, possessed a firearm on that date: If the Government can prove that he shot and wounded someone, such evidence will establish his possession of the gun.[1]

1. The Government also argues that these allegations are relevant to the calculation of Butler's sentence, in the event he is convicted, *see* U.S.S.G. §§ 2K2.1(c); 2A2.2(b)(2)-(3) (providing sentencing enhancements via cross reference for firearms possession cases where possession is in connection with another offense, which here might include aggravated assault with its own enhancements for gun discharge and injury caused), and that the language was included in the Indictment in part to protect against the possibility that the Supreme Court will direct that the facts warranting such sentencing enhancements must be found by a jury. *See United States v. Booker*, 375 F.3d 508 (7th Cir.2004), *cert. granted,* —— U.S. ——, 125 S.Ct. 11, 159 L.Ed.2d 838 (2004). Since the allegations are clearly relevant in any case, the Court need not address whether this rationale warrants inclusion of otherwise irrelevant material in an indictment. Under present Second Circuit law, such sentencing

■ Finally, Butler seeks to strike references to his alleged aliases. (Butler Br. 6–7.) Aliases relevant to the case and not prejudicial in themselves may be set forth in the indictment and proved at trial. *United States v. Dioguardi,* 428 F.2d 1033, 1040 (2d Cir.1970) (distinguishing non-prejudicial nickname from a "true" alias, which might provoke suspicion); *United States v. Esposito,* 423 F.Supp. 908, 911 (S.D.N.Y.1976) (Weinfeld, J.). Here, one of the aliases listed in the indictment is the name allegedly used on the passport that is the subject of the passport fraud counts in the passport fraud charges; others are less "aliases" than variant spellings of Butler's name or nicknames by which he is commonly known and will be referred to in the course of the evidence; and others are names that he used in connection with past arrests for crimes that the Government suggests may be relevant evidence under Fed.R.Evid. 404(b).[2] Moreover, none of the aliases is inflammatory or prejudicial in any way. *Cf. United States v. Persico,* 621 F.Supp. 842, 860–61 (S.D.N.Y.1985) (denying motions to strike aliases "Frankie the Beast" and "Carmine the Snake").

Accordingly, Butler's motion to strike alleged surplusage in the Indictment is denied.

## II. *Jones: Motion to Dismiss*

Defendant Kimberly Jones moves to dismiss the conspiracy charges against her, arguing first, that the conspiracy count is precluded by a grant of immunity used to compel her testimony before the Grand Jury (Jones Br. 6–8); second, that the charges are based on insufficient evidence

*(id.* 8); and third, that the perjury and false statement charges against her are multiplicitous *(id.* 8–13). Only the last of these arguments has merit.

■ First, the immunity order compelling Jones's testimony specifically provided that her testimony could not be used against her "in any criminal case, except a prosecution for perjury, giving a false statement, *or otherwise failing to comply with this Order."* (Gov't Br. Ex. A at 2 (emphasis added).) This language is authorized by, and drawn directly from, the statute authorizing such immunity grants, 18 U.S.C. § 6002. It is well established, and is in any event clear from the plain language of the statute, that the listing of perjury and false statement prosecutions as exceptions to the immunity provided "is not intended to be an exclusive enumeration." *United States v. Tramunti,* 500 F.2d 1334, 1345 (2d Cir.1974). And if any other crime constitutes a "failure to comply with [the immunity] Order," a conspiracy to obstruct the investigation by committing perjury oneself and encouraging others to do so plainly qualifies. Courts confronted with the issue have unanimously so held. *United States v. Duran,* 41 F.3d 540, 545 (9th Cir.1994); *United States v. Gregory,* 611 F.Supp. 1033, 1037 (S.D.N.Y.1985) (Weinfeld, J.). "So long as the witness's violation of the bargain is in the nature of perjury, contempt, obstruction of justice or some similar crime that impedes the truthseeking function of the tribunal, the government has the power, under the constitutional accommodation between the privilege against self-incrimi-

facts are to be found by the Court. *United States v. Mincey,* 380 F.3d 102 (2d Cir.2004). Until and unless the Supreme Court holds otherwise, such questions will not be put to the jury in this case.

**2.** Again, the Court implies no view on whether such evidence will prove admissible. The

denial of the present motion is without prejudice to any future motion to redact any copy of the Indictment given to the jury if the evidence alluded to by the Government proves inadmissible.

nation and the power to compel testimony, to enforce the bargain and prosecute the violation." *United States v. Pisani,* 590 F.Supp. 1326, 1342 (S.D.N.Y.1984).

■ Second, it is hornbook law that a federal defendant may not challenge a facially-valid indictment (and Jones makes no argument that the indictment here suffers from any facial defect) on the ground that it is based on insufficient evidence. *United States v. Williams,* 504 U.S. 36, 54–55, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992); *United States v. Calandra,* 414 U.S. 338, 345, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956).

Third, Jones asserts two different claims of multiplicity, of differing degrees of merit. First, Jones argues that the three perjury counts create three charges out of a single crime. Second, she contends that the perjury counts duplicate three additional charges of making false statements. The former challenge is meritless, but the latter is well taken.

■ "An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed." *United States v. Chacko,* 169 F.3d 140, 145 (2d Cir.1999). But that is not the case as to the three perjury counts here. The three perjury counts each pertain to perjury committed on distinct dates. It can hardly be said that a defendant who on three different occasions undertakes to lie to a grand jury has committed only one crime, which the Government artificially broke into separate charges, even if the testimony on each occasion relates to the same subject matter. *United States v. Bin Laden,* 91 F.Supp.2d 600, 619–20 (S.D.N.Y.2000) (perjury provided on different dates "not multiplicitous in the sense forbidden by the Double Jeopardy Clause" even where conceded that testimony charged in each count was "substantially the same"). *See also United States v. Guariglia,* 757 F.Supp. 259, 264 (S.D.N.Y.1991) (false answers to "questions addressed to the same issue, but posed ... a week apart [may] ... involve separate decisions by [defendant] to perjure himself" and therefore perjury counts charging them as separate crimes not multiplicitous).[3]

Indeed, the Government and the Grand Jury could properly have broken up the perjury charged in the three counts into even more separate charges had they so desired. While several of the particular specifications in the three perjury counts concern closely similar questions and answers, the statements specified as false are each distinct. In order to prevent an evasive witness from giving misleading but potentially literally true answers, careful interrogators necessarily ask questions that vary slightly, to make sure that no stone is left unturned. Because testimony alleged to be perjurious must be proved to be literally false, *Bronston v. United States,* 409 U.S. 352, 360–61, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), it is entirely proper for the Government to frame indictments that cite separate specifications of perjury for answers that vary in subtle but meaningful ways. Jones's somewhat careless brief cites overlapping questions and answers without noting that only one of the allegedly identical answers is actually charged as a perjury specification, and without even attempting to analyze the

---

**3.** Although there is authority that charges may be considered multiplicitous if they arise from an attempt to "bludgeon a witness who is lying by repeating and rephrasing the same question, thus creating more possible perjury counts," *Gebhard v. United States,* 422 F.2d 281, 289–90 (9th Cir.1970), Jones does not claim that this occurred here.

significant variations in the answers that are actually alleged to constitute perjury. (*Compare* Jones Br. 9–11 *with* Gov't Br. 30–33.) [4]

Jones's argument that the perjury and false statement claims are duplicative of each other is more substantial. Counts Three–A, Three–B and Four of the Indictment charge Jones with perjury before the Grand Jury in violation of 18 U.S.C. § 1623, on June 19, July 3, and August 21, 2003, respectively.[5] Counts Seven through Nine, in turn, charge her with making false statements in a matter within the jurisdiction of the judicial branch of the federal government, in violation of 18 U.S.C. § 1001, on the same dates. The Government does not dispute that the false statements charged in Counts Seven through Nine are the very same perjurious statements that are the subject of Counts Three–A, Three–B and Four. Jones quite reasonably contends that this is a perfect example of charging "a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed." *Chacko,* 169 F.3d at 145.

The Government correctly points out, however, that the test of multiplicity is not whether the same conduct is charged in both sets of counts. Frequently, the same conduct violates several distinct statutes. Where that is alleged to be the case, the test for multiplicity is ordinarily that long ago laid down by the Supreme Court in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932): The charges are not multiplicitous "[i]f there is an element in each offense that is not contained in the other." *Chacko,* 169 F.3d at 146. However, the ultimate touchstone of multiplicity is legislative intent, and even where the *Blockburger* test is not met, multiple charging, and even multiple punishment, is permissible if Congress intended to permit such punishment. *Albernaz v. United States,* 450 U.S. 333, 339–42, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981).

The Government applies this test by noting that § 1623 requires an oath, which § 1001 does not, while § 1001 requires that the statement be "within the jurisdiction of the executive, legislative, or

---

4. To the extent the perjury counts suffer from a technical vice, they exemplify not multiplicity but the opposite error of duplicity—charging *several distinct crimes in the same count. See United States v. Sturdivant,* 244 F.3d 71, 75 (2d Cir.2001) (defining duplicity). But technically duplicitous perjury indictments have long been accepted in this Circuit. *See United States v. Berardi,* 629 F.2d 723, 729 (2d Cir.1980) ("it has long been accepted practice to charge perjury before the grand jury, committed in the course of the same appearance, in a one count indictment with each false declaration set forth in a particular specification"). Defendants typically do not challenge this practice (as Jones does not challenge it here), because it results in fewer charges against them, and it is simple enough to require that the verdict identify which, if any, specifications form the basis of conviction on a particular count.

5. The numbering of the Counts in the Indictment has occasioned some confusion. Jones's brief references the numbering of the original Indictment, rather than the now-operative S1 Superseding Indictment. (*E.g.,* Jones Br. 8.) Further adding to the confusion, as a result of a clerical error by the Government, the S1 Superseding Indictment contains two counts numbered "Three." The Government, without opposition, asks the Court to amend the Indictment to correct the numbering. (Gov't Br. 27 n. 5.) That application is granted, and the Government is directed to prepare and serve on the defendants an amended, renumbered copy of the S1 Indictment. For purposes of this Opinion, the Court will use the numbers of the present S1 Indictment, adopting the convention utilized in the Government's brief of designating the two "Count Threes" as "Three–A" and "Three–B."

judicial branch of the Government of the United States," which is not a requirement of § 1623. But the latter half of this formula is questionable. Section 1623 prohibits making "any false material declaration" "in any proceeding before or ancillary to any court or grand jury of the United States." Thus, if statements before a grand jury are to be considered statements within the jurisdiction of the judicial branch within the meaning of § 1001, then any statement that violates § 1623 must necessarily be one "within the jurisdiction of·the ... judicial branch of the Government of the United States." 18 U.S.C. § 1001. As the Second Circuit has held in *United States v. Ben Zvi*, 168 F.3d 49, 57 (2d Cir.1999), "*Blockburger* is not satisfied where the elements of one charged offense are subsumed within another charged offense." Here, that standard would seem to be met: While a false statement that violates § 1001 will not always be a violation of § 1623, because the latter only applies to sworn testimony, a violation of § 1623 will always necessarily violate § 1001, because such false testimony will always constitute a "materially false ... statement" "within the jurisdiction of the ... judicial branch" of government—assuming that grand jury testimony is covered by § 1001.[6]

That assumption, however, discloses a deeper problem with the charges in Counts Seven through Nine, which has not been the subject of a motion by defendants or briefing by the Government. It is far from clear that 18 U.S.C. § 1001 punishes false statements before a grand jury at all.[7]

The Court's research has uncovered no case sustaining an indictment in which false testimony before a grand jury is charged under § 1001. At least two cases, however, have held that false statements within the jurisdiction of grand juries are not covered by that statute. *United States v. Deffenbaugh Industries, Inc.*, 957 F.2d 749, 754 (10th Cir.1992); *United States v. Allen*, 193 F.Supp. 954, 959 (S.D.Cal.1961). Both of these cases, however, pre-date the adoption of the current version of § 1001 in the False Statements Accountability Act of 1996, Pub.L. 104–292, 110 Stat. 3459 (1996). An examination of the continued viability of these precedents requires a detour into the Supreme Court's decisions regarding § 1001 that led to the adoption of that statute.

Before the 1996 amendments, § 1001 had prohibited the making of false statements "in any matter within the jurisdiction of any·department or agency of the United States." In 1955, the Supreme Court sustained the conviction under § 1001 of a former Member of Congress who had falsely certified to the payroll

6. *United States v. Guariglia*, 757 F.Supp. at 265, on which the Government relies, is not germane to the present problem. In *Guariglia*, the Court does indeed characterize perjury and "false statements to government officials" as separate offenses, punishable under separate statutes. *Id.* But the language quoted by the Government is torn from its context. In *Guariglia*, the separate counts in question were charges of perjury committed at a trial and of a false statement made to prosecutors in an interview months after the trial was completed. *Id.* at 261–62, 264. Guariglia told the same lie (about when he had stopped gambling) on three separate occasions—twice under oath on direct and on cross-examination during a trial in 1989, and again in meeting with prosecutors in January 1990. That the Court found these charges not to be multiplicitous has no bearing on whether the very same false statements, made under oath before a grand jury on a single occasion, may be charged both as perjury under § 1623 and as false statements under § 1001.

7. The same issue is presented by Counts Ten and Eleven, which charge similar crimes against defendant Dopwell.

office of the House of Representatives that a certain person was entitled to a salary, holding that the word "department" in that statute "was meant to describe the executive, legislative *and judicial* branches of the Government." *United States v. Bramblett,* 348 U.S. 503, 509, 75 S.Ct. 504, 99 L.Ed. 594 (1955) (emphasis added). Despite this broad reading, lower courts, concerned that the application of a prohibition of false unsworn statements to judicial proceedings would inhibit advocacy and effectively obviate the prohibition of false testimony *under oath* in the perjury statutes,[8] quickly developed the "judicial function" doctrine, limiting the application of § 1001 in the context of the judicial branch to "only those misrepresentations falling within a court's 'administrative' or 'housekeeping' functions." *Hubbard v. United States,* 514 U.S. 695, 698, 115 S.Ct. 1754, 131 L.Ed.2d 779 (1995). This distinction between false statements made in the context of the exercise of adjudicative functions, which were held not covered by § 1001, and those made in the context of a court's administrative responsibilities, which were held within it, was first suggested in *Morgan v. United States,* 309 F.2d 234, 237 (D.C.Cir.1962), and over the next thirty years became "entrenched" in a number of circuits, *Hubbard,* 514 U.S. at 699, 115 S.Ct. 1754, including our own. *See United States v. Masterpol,* 940 F.2d 760, 764–66 (2d Cir.1991).[9]

In *Hubbard,* however, the Sixth Circuit, over a dissent, became the first court of appeals to reject the distinction, and to apply § 1001 to false statements made to a court in the course of a judicial proceeding.

*United States v. Hubbard,* 16 F.3d 694 (6th Cir.1994). Taking certiorari to resolve the split in the circuits, the Supreme Court reversed, but went beyond endorsement of the "judicial function exception" to overrule *Bramblett* altogether and hold that federal courts are not agencies or departments of the United States. 514 U.S. at 715, 115 S.Ct. 1754.

Congress, however, quickly acted to overrule *Hubbard* by recasting the statute. The present wording of § 1001, adopted in 1996, prohibits false statements "in any matter within the jurisdiction of the executive, legislative or judicial branch of the Government of the United States." 18 U.S.C. § 1001(a). However, Congress also adopted an exception, providing that this prohibition "does not apply to a party to a judicial proceeding, or that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding." *Id.* § 1001(b).

It is arguable that the plain meaning of this provision covers false testimony before a grand jury. The main prohibition in § 1001(a), covers *any* false statement "within the jurisdiction of the ... judicial branch," while the exception in § 1001(b) exempts statements "by a party to a judicial proceeding ... for statements ... submitted by such party ... to a judge or magistrate." The language of the exception makes no explicit reference to grand jury proceedings, or for that matter to witnesses in any sort of proceeding, and does refer expressly to statements made to a "judge or magistrate," which grand jury

---

8. "[S]ection 1001 should not be extended 'to its literal breadth,' and should not be permitted to swallow up perjury." *United States v. Mayer,* 775 F.2d 1387, 1390 (9th Cir.1985), quoting *United States v. Bedore,* 455 F.2d 1109, 1110 (9th Cir.1972).

9. For example, false claims submitted by lawyers appointed under the Criminal Justice Act might be considered false statements in connection with an administrative function of the court, while false testimony or false representations during a legal argument would occur during an adjudicative function.

testimony is not. On the other hand, while this is a plausible reading of the language, it is hardly conclusive. While the Grand Jury is in many respects a part of the judicial branch of government, there is certainly authority for treating it as a unique institution that stands apart from any of the branches, "a sui generis institution derived from the people." *United States v. Cox*, 342 F.2d 167, 190 (5th Cir. 1965) (Wisdom, J., concurring). The Supreme Court summarized this authority for "the functional independence of the grand jury from the Judicial Branch" in *United States v. Williams*, 504 U.S. 36, 47–48, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992):

> "[R]ooted in long centuries of Anglo–American history," *Hannah v. Larche*, 363 U.S. 420, 490[, 80 S.Ct. 1502, 4 L.Ed.2d 1307] (1960) (Frankfurter, J., concurring in result), the grand jury is mentioned in the Bill of Rights, but not in the body of the Constitution. It has not been textually assigned, therefore, to any of the branches described in the first three Articles. It " 'is a constitutional fixture in its own right.' " *United States v. Chanen*, 549 F.2d 1306, 1312 (9th Cir.1977) (quoting *Nixon v. Sirica*, 487 F.2d 700, 712 & n. 54 (1973)), *cert. denied*, 434 U.S. 825[, 98 S.Ct. 72, 54 L.Ed.2d 83] (1977). In fact the whole theory of its function is that it belongs to no branch of the institutional Government, serving as a kind of buffer or referee between the Government and the people. *See Stirone v. United States*, 361 U.S. 212, 218[, 80 S.Ct. 270, 4 L.Ed.2d 252] (1960); *Hale v. Henkel*, 201 U.S. 43, 61[, 26 S.Ct. 370, 50 L.Ed. 652] (1906); G. Edwards, The Grand Jury 28–32 (1906). Although the grand jury normally operates, of course, in the courthouse and under judicial auspices, its institutional relationship with the Judicial Branch has traditionally been, so

to speak, at arm's length. Judges' direct involvement in the functioning of the grand jury has generally been confined to the constitutive one of calling the grand jurors together and administering their oaths of office. *See United States v. Calandra*, 414 U.S. 338, 343[, 94 S.Ct. 613, 38 L.Ed.2d 561] (1974); Fed.R.Crim.P. 6(a).

Thus, it is hardly clear that false testimony before a grand jury constitutes a false statement "within the jurisdiction of the ... judicial branch."

The legislative history of this provision, moreover, makes clear that the change in wording of § 1001 was adopted without any intention to supersede the perjury statutes as the mechanism for prosecuting false testimony before a grand jury. The express purpose of the amendments to § 1001 was to return the law regarding false statements in judicial proceedings to the *status quo ante Hubbard*. The House Report accompanying the bill specifically referred to *Hubbard*, and noted that the bill's purpose was "to ensure that section 1001 applies to the judicial and legislative branches as well as the executive branch." House Judiciary Comm., H. Rep. No. 104–680, at 2 (July 16, 1996), 1996 U.S.C.C.A.N. 3935, 3936 (1996). However, the Report made clear that the bill was intended to accomplish the "restoration" of false statement penalties abrogated by *Hubbard* "while ensuring that the scope of section 1001 is limited, *as it was prior to* Hubbard." *Id.* (emphasis added). "To that end," the Report went on, the bill contained the "judicial function exception" now embodied in § 1001(b). *Id.* Citing *Bramblett* and *Morgan*, the Report noted further that before *Hubbard*, § 1001 "was interpreted expansively ... to include statements made to Congress and the courts, *when the courts were functioning in their administrative, not adjudicatory,*

*capacity."* *Id.* at 3, 1996 U.S.C.C.A.N. 3935, 3936 & n. 1 (emphasis added). The Report makes clear that the exception in § 1001(b)

> is intended to codify the judicial function exception which has long been recognized by many Federal courts as necessary to safeguard from the threat of prosecution statements made in the course of adversarial litigation.... The exception is consistent with the Court's [*sic*] reasoning in *Bramblett* and *Morgan,* and subsequent case law, which consistently distinguished the adjudicative from the administrative functions of the court, exempting from section 1001 only those communications made to the court when it is acting in its adjudicative or judicial capacity, and leaving subject to section 1001 those representations made to the court when it is functioning in its administrative capacity. Thus, false statements uttered during the course of court proceedings or contained in court pleadings would not be covered by section 1001.

*Id.* at 4, 1996 U.S.C.C.A.N. 3935, 1996 U.S.C.C.A.N. 3935, 3937–38. The exception, the Report noted, was made sufficiently broad to cover not merely statements, but also "representations, writings or documents" filed in court, since such filings "are already covered by other statutes," such as those prohibiting perjury and obstruction. *Id.* at 4, 1996 U.S.C.C.A.N. 3935, 1996 U.S.C.C.A.N. 3935, 3938 & n. 6.

This history makes abundantly clear that Congress was not thinking about grand jury proceedings when it overruled *Hubbard* and expanded the scope of § 1001 in 1996. Indeed, the history makes clear that almost no one has *ever* thought much about the applicability of § 1001 to grand jury testimony. During the *Bram-*

*blett-Morgan* regime, as the Supreme Court made clear in *Hubbard,* no appellate precedent could be found affirming a § 1001 conviction for testimony or statements to a court of any kind. Indeed, the Court specifically noted the existence of a Justice Department policy against bringing such prosecutions, and directing prosecutors to utilize the perjury and obstruction of justice statutes in such situations. 514 U.S. at 714–15, 115 S.Ct. 1754, citing United States Attorneys' Manual ¶ 9–69.267 (1992).[10] The case law relating to grand juries appears to have consisted solely of *Allen,* in which a district court dismissed a § 1001 indictment for giving false grand jury testimony, and *Deffenbaugh,* in which the Tenth Circuit affirmed dismissal of a similar indictment for submitting a false affidavit of compliance with a grand jury subpoena duces tecum. In *Allen,* the court held that a grand jury "is not an 'agency of the United States' within the meaning of § 1001," and that "this statute was not intended to cover [a defendant] accused of having made a false and fraudulent reply when interrogated by the Grand Jury." 193 F.Supp. at 959. In *Deffenbaugh,* the court specifically based its holding on the "judicial function exception," finding that "grand jury investigations are criminal proceedings that are a part of the judicial process." 957 F.2d at 752–53.

Summarizing this tangled history, it appears that before 1996, no court had ever interpreted § 1001 to apply to grand jury testimony, and that the limited case law that existed found that, despite *Bramblett's* holding that § 1001 covered false statements within the jurisdiction of the judiciary, false grand jury testimony was *not* within the prohibition of the statute, because the holding of *Bramblett* was lim-

---

**10.** No such provision appears in the current edition of the Manual.

ited to statements made in the course of courts' administrative rather than adjudicatory functions. *Hubbard* briefly disturbed that consensus, by holding that *no* statements within the purview of the judiciary were covered by § 1001, but Congress quickly acted with the intention to restore the previous state of the law.

Against this background, there is no basis to conclude that Congress intended § 1001 to penalize false grand jury testimony at all, let alone to permit cumulative punishment or cumulative prosecution for such testimony under both §§ 1001 and 1623. Thus, to the extent that testimony before a grand jury is not covered by § 1001, Counts Seven through Nine of the superseding indictment do not charge crimes at all; in the alternative, if false testimony before a grand jury constitutes a false statement "within the jurisdiction of the . . . judicial branch," then any charge of perjury under § 1623 is entirely subsumed within a § 1001 charge based on the same false testimony, and is therefore multiplicitous. Accordingly, the Court will dismiss as multiplicitous and as failing to state a crime those counts in the Indictment that charge such false testimony as violating 18 U.S.C. § 1001.[11]

III. *Weston: Motion to Dismiss*

Defendant Hillary Weston also makes a multiplicity argument, challenging Counts Thirteen and Fourteen of the Indictment, which respectively charge her with obstruction of the Grand Jury's investigation in violation of 18 U.S.C. § 1503, and withholding a subpoenaed document in violation of 18 U.S.C. § 1512(c)(1). Weston argues that these two charges "punish

the identical conduct; to wit, Weston's alleged intentional failure to turn over documents to the grand jury." (Weston Br. 13.) The argument fails, at least at this stage of the proceedings.

The obstruction statutes referenced in the two counts each incorporate elements not present in the other. Section 1503 requires proof that the defendant corruptly endeavored to influence or impede the Grand Jury, which is not an element of § 1512(c)(1). Conversely, § 1512(c)(1) requires proof specifically of the concealment of a document, with intent to impair its availability at an official proceeding, which is not required to violate § 1503.

More specifically, the Government points out that this is no mere artificial or theoretical distinction, but that on the evidence it intends to present in this case, a jury could convict on one count while acquitting on the other. Thus, the Government apparently will attempt to prove at trial that Weston withheld documents that tended to show that she participated in a conspiracy with Butler to commit passport fraud. As the Grand Jury was investigating the February 25, 2001, shooting, a reasonable jury could find that Weston did withhold the documents, which were covered by a grand jury subpoena, but that she did so not in order to impede the Grand Jury's investigation, but to prevent law enforcement from discovering her involvement in another, independent crime. Accordingly, a jury making such findings could convict her of the specific count of withholding documents in violation of § 1512, but acquit her of violating the

---

11. Although defendant Monique Dopwell does not move for similar relief, the same reasoning set forth above requires dismissal of Counts Ten and Eleven of the indictment, which similarly charge Dopwell with violations of 18 U.S.C. § 1001 based on the same allegedly false grand jury testimony that forms the basis of the perjury charges in Counts Five and Six.

more general obstruction of justice statute, § 1503.[12]

Whether this theory, or any other distinction between the two counts, is plausible on the facts of this case will have to await the evidence at trial. It may well be that on the evidence ultimately presented, the two counts will prove to be confusingly duplicative. At this stage of the proceeding, however, the Government has adequately distinguished the two counts in the abstract, such that the motion to dismiss one of the counts as multiplicitous must be denied.

## IV. *Butler, Weston, and Dopwell: Discovery Motions*

■ Defendants Butler, Weston and Dopwell each move for additional discovery and/or a bill of particulars. These motions are without merit.

Butler and Weston both seek disclosure, at least four weeks prior to trial, of any evidence of other bad acts that the Government will seek to introduce pursuant to Fed.R.Evid. 404(b). (Weston Br. 15–18; Butler Br. 7–8.) The Government replies that it has already provided "notice and considerable discovery" with respect to certain incidents that might fall within this category. (Gov't Br. 58.) The Government further agrees that it will "make every effort to abide by [the defendants'] request" and move for the admission of Rule 404(b) evidence four weeks ahead of trial. (*Id.* 58–59.)

Rule 404(b) permits the admission of evidence of other acts of a defendant for certain purposes. The Rule does not set any particular deadline for the Government to provide notice of such evidence, requiring only "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown." Since the admission of such evidence is frequently contested, pretrial notice serves the salutary purpose of permitting the defense to make *in limine* motions that further the efficiency of the trial process. The government has not suggested the existence of any "good cause" to excuse pretrial notification in this case, and indeed has offered to provide such notice, and to undertake the burden of moving *in limine* for the admission of the evidence it intends to use. This is more than the defendants are entitled to as a matter of law. Of course, if whatever notice the Government provides is ultimately found unreasonable by the Court, it risks the exclusion of any proffered evidence. Without question, four weeks' notice is more than ample to avoid this result.

■ Dopwell seeks a bill of particulars, and a lengthy list of discovery items. (Affirmation of Brian Kaplan, dated October 1, 2004, at 5–13.) The discovery requests are frivolous. Dopwell simply provides a lengthy and generalized list of items, the vast majority of which clearly have already been provided, do not exist, or are not required to be discovered, unaccompanied by a memorandum of law or by any account of what discovery has and has not been provided, or why any of the requested materials that have not been provided are relevant. Absent a more focused motion for specific material, the Court has no meaningful basis on which to act. The Government represents that it has complied with its obligations under *Brady v.*

---

**12.** Presumably, a jury *could* convict Weston of violating § 1503 on this evidence, if it found that her intention was to obstruct the Grand Jury's overall investigation. The point is that Weston's guilt could turn on disputed factual questions about her intentions, and it is conceivable that a jury could find that she withheld certain documents in order to keep the grand jury from seeing them, but not to obstruct its investigation.

*Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and that it will continue to do so if any *Brady* material comes to its attention. More the Court cannot order. *United States v. Coppa,* 267 F.3d 132 (2d Cir.2001). With respect to both Rule 16 and *Brady,* therefore, Dopwell's motions will be denied, without prejudice to any subsequent, particularized request.

█ Dopwell's motion for a bill of particulars will be denied. A bill of particulars is intended to provide sufficient information about the nature of the offense to permit a defendant to prepare for trial, to avoid unfair surprise, and to preclude a second prosecution for the same offense. Fed.R.Crim.P. 7(f); *United States v. Torres,* 901 F.2d 205, 234 (2d Cir.1990); *United States v. Macchia,* 35 F.3d 662, 671 n. 1 (2d Cir.1994). But a bill of particulars is not a general tool of discovery, nor is it a device to give the defense a road map to the government's case. *Torres,* 901 F.2d at 234; *United States v. Kushner,* 135 F.2d 668, 673–74 (2d Cir.1943). "A bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts for which he is accused." *United States v. Feola,* 651 F.Supp. 1068, 1132 (S.D.N.Y.1987), *aff'd,* 875 F.2d 857 (2d Cir.1989).

█ Dopwell's request does not meet these standards. The indictment in this case provides considerable detail about the acts charged, and the Government has provided extensive discovery. The indictment is not required to identify all alleged co-conspirators, or to specify the nature, time, and place of every overt act the defendant or others committed in furtherance of the alleged conspiracy, or to set forth all the evidence the Government intends to introduce. These, indeed, are the very sorts of information with respect to which courts routinely deny requests for particulariza-

tion. *See, e.g., Torres,* 901 F.2d at 233–34; *United States v. Needham,* No. 04 Cr. 196, 2004 WL 1903061, at *5 (S.D.N.Y. Aug.26, 2004); *United States v. Conley,* No. 00 Cr. 0816, 2002 WL 252766, at *4 (S.D.N.Y. Feb.21, 2002). While it might make it easier for defense counsel to prepare for trial or to evaluate the wisdom of pleading guilty were the government to point out the critical evidence implicating a particular defendant, no rule requires it to do so, and certainly Rule 7(f) does not require any such disclosure to be, in effect, hardwired into the indictment as a limitation on what the government may prove or argue at trial.

## CONCLUSION

For the foregoing reasons, Counts Seven, Eight, Nine, Ten, and Eleven are dismissed for failure to charge a crime and/or multiplicity. All other motions (Butler's motion to strike alleged surplusage from the indictment; Dopwell's motion for a bill of particulars; Butler's, Dopwell's, and Weston's motions for discovery; Weston's motion to dismiss Count Thirteen or Fourteen on grounds of multiplicity; Jones's motion to dismiss the charges against her pursuant to 18 U.S.C. § 6002 and for insufficiency of the evidence; and Jones's motion to dismiss the perjury counts against her as multiplicitous) are denied.

SO ORDERED.